# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS,** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **CASE NO. 4:24-cv-00941** |
| | ) | |
| **COLONY RIDGE, INC.; COLONY** | ) | |
| **RIDGE DEVELOPMENT, LLC;** | ) | |
| **COLONY RIDGE BV, LLC; COLONY** | ) | |
| **RIDGE LAND, LLC; T-REX** | ) | |
| **MANAGEMENT, INC.; JOHN HARRIS;** | ) | |
| **HOUSTON EL NORTE PROPERTY** | ) | |
| **OWNERS ASSOCIATION, INC.; and** | ) | |
| **CH&P MANAGEMENT LLC,** | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION & SUMMARY OF THE ARGUMENT ........................................................... 1

BACKGROUND ..................................................................................................................... 2

STATEMENT OF THE ISSUES................................................................................................ 5

LEGAL STANDARD............................................................................................................... 5

ARGUMENT ........................................................................................................................... 5

    I.    THIS COURT HAS SUBJECT-MATTER JURISDICTION. ......................................... 5

        A. The State Complied with the Pre-Suit Notice Requirement. ................................... 6

        B. The CFPA Permits Contemporaneous Federal and State Enforcement......................... 8

    II.   THE STATE PROPERLY PLED CLAIMS AUTHORIZED UNDER THE CFPA. ...... 11

        A. Rule 8 Applies to the State's CFPA Claims. ........................................................ 11

        B. Alternatively, the Amended Complaint Meets Rule 9(b)'s Heightened Pleading
           Standard. ............................................................................................................. 12

        C. The State's Prayer for Relief is Not Grounds for Dismissal........................................ 13

    III.  THE STATE PROPERLY PLED CLAIMS AUTHORIZED UNDER THE TEXAS
        DTPA. ...................................................................................................................... 13

        A. Rule 8 Applies to the State's DTPA Claims, and the State may Bring these Claims
           Regardless of the Presence of, or Injury to, Consumers. ............................................. 14

        B. The State Properly Pled Defendants' Violations of DTPA § 17.46(b)(1). ................... 16

        C. The State Properly Pled Defendants' Violations of DTPA § 17.46(b)(2). ................... 17

        D. The State Properly Pled Defendants' Violations of DTPA § 17.46(b)(5). ................... 18

        E. The State Properly Pled Defendants' Violations of DTPA § 17.46(b)(9). ................... 20

        F. The State Properly Pled Defendants' Violations of DTPA § 17.46(b)(12). ................... 21

    IV.  THE STATE PROPERLY PLED CLAIMS FOR FRAUD IN REAL ESTATE............. 23

CONCLUSION........................................................................................................................ 25

CERTIFICATE OF SERVICE ................................................................................................. 27

# TABLE OF AUTHORITIES

## Cases

*Amstadt v. U.S. Brass Corp.*,
 919 S.W.2d 644 (Tex. 1996)........................................................................................ 16

*Arif v. Mukasey*,
 509 F.3d 677 (5th Cir. 2007) ................................................................................... 8, 9

*Arvie v. Dodeka, LLC*,
 No. H-09-1076, 2009 WL 10711716 (S.D. Tex. Dec. 31, 2009). ............................. 25

*Ashcroft v. Iqbal, et al.*,
 556 U.S. 662 (2009)..................................................................................................... 5

*Avila v. State*,
 252 S.W.3d 632 (Tex. App.—Tyler, 2008, no pet.). ................................................ 25

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..................................................................................................... 5

*Benchmark Elec., Inc. v. J.M. Huber Corp.*,
 343 F.3d 719 (5th Cir. 2003). ................................................................................... 12

*CFPB v. All Am. Check Cashing, Inc.*,
 No. 3:16-CV-356-WHB-JCG, 2016 WL 11635752 (S.D. Miss. July 15, 2016)............... 11, 14

*CFPB v. Cmty. Fin. Servs. Ass'n*,
 601 U.S. 416 (2024).................................................................................................. 6, 7

*CFPB v. Frederick J. Hanna & Assocs., P.C.*,
 114 F. Supp. 3d 1342 (N.D. Ga. 2015). ............................................................... 11, 14

*CFPB v. Navient Corp.*,
 3:17-CV-101, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017) ...................................... 11

*CFPB v. Ocwen Fin. Corp.*,
 No. 17-80495-CIV, 2019 WL 13203853 (S.D. Fla. Sept. 5, 2019)........................... 11

*CFPB v. RD Legal Funding, LLC*,
 332 F. Supp. 3d 729 (S.D.N.Y. 2018)....................................................................... 11

*CFPB, et al. v. Colony Ridge Development, LLC, et al.*,
 Case No. 4:23-CV-04729 (S.D. Tex. filed Dec. 20, 2023)................................... 6, 10

*Crawford v. Ace Sign, Inc.*,
 917 S.W.2d 12 (Tex. 1996)....................................................................................... 20

*Flenniken v. Longview Bank & Trust Co.*,
 661 S.W.2d 705 (Tex. 1983)..................................................................................... 15

*Franklin v. State*,
 631 S.W.2d 519 (Tex. App.—El Paso 1982, no writ) ............................................... 15

*FTC v. Consumer Health Benefits Ass'n*,
  No. 10 CIV. 3551 ILG RLM, 2012 WL 1890242 (E.D.N.Y. May 23, 2012). ........................ 14

*FTC v. Debt Relief USA Inc.*,
  No. 3:11-CV-2059-N, 2012 WL 13024099 (N.D. Tex. Apr. 19, 2012). ................................. 14

*FTC v. Freecom Commc'ns, Inc.*,
  401 F.3d 1192 (10th Cir. 2005) ............................................................................................. 14

*Gilmour v. Blue Cross & Blue Shield of Ala.*,
  2021 WL 1196272 (E.D. Tex. Mar. 30, 2021) .................................................................. 16, 24

*Ginn v. NCI Bldg. Sys., Inc.*,
  472 S.W.3d 802 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ........................................... 24

*Good Samaritan Hosp. v. Shalala*,
  508 U.S. 402 (1993) ................................................................................................................. 8

*Henderson v. Shinseki*,
  562 U.S. 428, 131 S.Ct. 1197 (2011) ...................................................................................... 8

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
  920 F.3d 890 (5th Cir. 2019) ................................................................................................... 5

*Junior Volleyball Ass'n of Austin v. Summit Hosting LLC*,
  No. 1:17-CV-756-LY, 2018 WL 4343446 (W.D. Tex. July 17, 2018), *report and
  recommendation adopted*, No. 1:17-CV-756-LY, 2018 WL 4343430 (W.D. Tex. Aug. 6,
  2018). ..................................................................................................................................... 22

*Lee v. Samsung Elecs. Am., Inc.*,
  No. 4:21-CV-01321, 2024 WL 578572 (S.D. Tex. Feb. 13, 2024) ........................................ 13

*Lewis v. Fresne*,
  252 F.3d 352 (5th Cir. 2001). ................................................................................................. 5

*Lone Star Ford, Inc. v. McGlashan*,
  681 S.W.2d 720 (Tex. App.—Houston [1st Dist.] 1984, no writ) ........................................... 15

*Marek v. Lehrer*,
  No. 03-17-00509-CV, 2018 WL 6217566 (Tex. App.—Austin Nov. 29, 2018, no pet.)......... 22

*McCaig v. Wells Fargo Bank (Tex.), N.A.*,
  788 F.3d 463 (5th Cir. 2015) ................................................................................................. 22

*Mitchell Energy Corp. v. Martin*,
  616 F. Supp. 924 (S.D. Tex 1985) ................................................................................... 13, 24

*Mother & Unborn Baby Care of N. Tex., Inc. v. State*,
  749 S.W.2d 533 (Tex. App.—Fort Worth 1988, writ denied)......................................... 16, 21

Mott's LLP v. Comercializadora Eloro, S.A.,
  507 F. Supp. 3d 780 (W.D. Tex. 2020)................................................................................... 13

*Navajo Nation v. Wells Fargo & Co.*,
  344 F. Supp. 3d 1292 (D.N.M. 2018) .................................................................................... 10

iv

*Pennington v. Singleton*,
    606 S.W.2d 682 (Tex. 1980) .................................................................. 18, 19

*Pennsylvania by Shapiro v. Mariner Fin., LLC*,
    No. CV 22-3253, 2024 WL 169654 (E.D. Pa. Jan. 12, 2024) ...................... 8

*Pennsylvania v. Navient Corp.*,
    967 F.3d 273 (3d Cir. 2020) ........................................................................ 9

*Pope v. Rollins Protective Servs. Co.*,
    703 F.2d 197 (5th Cir. 1983) ...................................................................... 17

*Riverside Nat'l Bank v. Lewis*,
    603 S.W.2d 169 (Tex. 1980) ........................................................................ 15

*Russello v. United States*,
    464 U.S. 16 (1983) ........................................................................................ 9

*Sergeant Oil & Gas Co., Inc. v. Nat'l Maint. & Repair, Inc.*,
    861 F. Supp. 1351 (S.D. Tex. 1994). ......................................................... 17

*Strickland v. Bank of New York Mellon*,
    838 F. App'x 815 (5th Cir. 2020) .............................................................. 16

*Thomas v. Nat'l Collector's Mint, Inc.*,
    No. CV H-18-0348, 2018 WL 6329841 (S.D. Tex. Dec. 4, 2018). ............. 21

*Thomas v. State*,
    226 S.W.3d 697 (Tex. App.—Corpus Christi 2007, pet. dism'd) ............... 25

*Tony Gullo Motors I, L.P. v. Chapa*,
    212 S.W.3d 299, (Tex. 2006) ............................................................... 20, 22

*Tukua Invs., LLC v. Spenst*,
    413 S.W.3d 786 (Tex. App.—El Paso 2013, pet. denied) ......................... 24

*Tweedell v. Hochheim Prairie Farm Mut. Ins. Ass'n*,
    1 S.W.3d 304 (Tex. App.—Corpus Christi 1999, no pet) ......................... 16

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ............................................................... 13, 16

## Statutes

12 U.S.C. § 2607 ................................................................................................ 9

12 U.S.C. § 5481(12)(R) ................................................................................... 2

12 U.S.C. § 5481(14) ........................................................................................ 2

12 U.S.C. § 5497 ............................................................................................... 7

12 U.S.C. § 5514(c)(3)(B) ................................................................................. 9

12 U.S.C. § 5536 ............................................................................................... 1

12 U.S.C. § 5538(b)(6) ...................................................................................... 9

v

12 U.S.C. § 5552 ................................................................................. 2, 6, 8

12 U.S.C. § 5552(a) ................................................................................. 1

12 U.S.C. § 5552(a)(1) ...................................................................... 2, 6, 8

12 U.S.C. § 5552(b)(1) ...................................................................... 6, 10

12 U.S.C. § 5552(b)(1)(A) .................................................................... 8

12 U.S.C. § 5552(b)(2) ........................................................................ 10

12 U.S.C. § 5552(b)(2)(A) .................................................................. 10

12 U.S.C. § 5565(a)(1) ......................................................................... 5

15 U.S.C. § 1640 .................................................................................. 9

15 U.S.C. § 1679h ................................................................................ 9

15 U.S.C. § 1681s ................................................................................. 9

15 U.S.C. § 2073 .................................................................................. 9

15 U.S.C. § 45b .................................................................................... 9

15 U.S.C. § 45c .................................................................................... 9

15 U.S.C. § 5712 .................................................................................. 9

15 U.S.C. § 6103 .................................................................................. 9

15 U.S.C. § 6504 .................................................................................. 9

15 U.S.C. § 7706 .................................................................................. 9

15 U.S.C. § 7804 .................................................................................. 9

15 U.S.C. §§ 1701-1720 ...................................................................... 2

21 U.S.C. § 337 .................................................................................... 9

28 U.S.C. § 1367 ............................................................................. 5, 11

49 U.S.C. § 14711 ................................................................................ 9

Tex. Bus. & Com. Code § 17.46(a) .............................................. 13, 18

Tex. Bus. & Com. Code § 17.46(b)(1) .......................................... 13, 16

Tex. Bus. & Com. Code § 17.46(b)(12) .............................................. 13

Tex. Bus. & Com. Code § 17.46(b)(2) ...................................... 13, 17, 18

Tex. Bus. & Com. Code § 17.46(b)(5) .......................................... 13, 19

Tex. Bus. & Com. Code § 17.46(b)(9) ................................................ 13

Tex. Bus. & Com. Code § 17.46(c)(1) ................................................ 14

Tex. Bus. & Com. Code § 17.47(a) .............................................. 14, 15

Tex. Bus. & Com. Code § 17.47(g) .................................................... 18

Tex. Bus. & Com. Code § 17.50(a) .............................................. 15, 16

vi

Tex. Bus. & Com. Code § 27.01 ................................................................................ 1, 23

Tex. Bus. & Com. Code §§ 17.41-17.63 ...................................................................... 1

**Other Authorities**

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
   FEDERAL PRACTICE AND PROCEDURE § 1296 (4th ed. 2024) .................................... 14

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
   FEDERAL PRACTICE AND PROCEDURE § 1357 (4th ed. 2024) .................................... 13

## INTRODUCTION & SUMMARY OF THE ARGUMENT

Plaintiff, the State of Texas ("Plaintiff" or "State"), respectfully submits its opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 46 ("Motion"). Defendants' Motion should be denied because: (1) this Court has subject-matter and supplemental jurisdiction over this matter; (2) the State has statutory authority to bring its asserted federal and state law claims; and (3) the State's pleadings are sufficient to put Defendants on notice of the nature of the claims and demonstrate that the State has a factual basis for its allegations. The State's First Amended Complaint, ECF No. 27 ("Amended Complaint"), sets forth nearly seventy pages of well-supported factual allegations detailing Defendants' systemic unlawful business practices, including ten specific and detailed examples of Texas consumers who relied on Defendants' misrepresentations. ECF No. 27 ¶¶ 114-90.

The Amended Complaint establishes that Defendants' operations are shot through with deception from beginning to end. Defendants promise cheap, ready-to-build land with available utilities and city services when in fact Defendants provide consumers with lots that have no utility or city service functionalities. Instead of disclosing that Defendants are the party selling these lots, they create fake social media accounts to give the impression that the lots are sold by others. And Defendants collect millions of dollars in property owners' association ("POA") dues from consumers for non-existent improvements and services. Those practices, along with many others, serially violate the Texas Deceptive Trade Practices—Consumer Protection Act under Texas Business & Commerce Code §§ 17.41-17.63 (the "DTPA"), Texas Business & Commerce Code § 27.01, the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5552(a), 5536,

and the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. §§ 1701-1720.[1]

Defendants' Motion is remarkable for its attempt to skirt the actual allegations and to misleadingly depict their operations as being a great "commercial achievement." ECF No. 46 at 2. Defendants boast, for example, that "ninety percent" of its buyers' loans are "not in foreclosure." *Id*. But Defendants' rate of foreclosing on its buyers is 50 times greater than the 2023 nationwide foreclosure rate. ECF No. 27 ¶ 2. And that is largely because Defendants serially mislead buyers into purchasing property that is not what Defendants represent it to be. Moreover, Defendants make light of the serious misconduct at issue, such as by implying that the State's action is principally about minutiae such as whether Defendants "conducted rushed closings." ECF No. 46 at 10. And even so, Defendants cannot muster an argument that the entire Amended Complaint fails to state a claim. *Accord* ECF No. 46 at 13 (arguing only that "four" out of nine allegations under a specific statutory subsection fail to state a claim); *id.* at 14 (arguing only that "Several" theories under another subsection fail to state a claim).

As summarized above and set forth in greater detail below, however, Defendants have engaged in a series of highly misleading, deceptive, and ultimately abusive conduct deliberately aimed at unsuspecting and vulnerable buyers. Their Motion to Dismiss should be denied.

## **BACKGROUND**

On March 14, 2024, following a seven-month investigation, the State filed this lawsuit. Complaint, ECF No. 1. The State provided notice to the Consumer Financial Protection Bureau ("CFPB" or "Bureau") of its intent to file the lawsuit, as required under 12 U.S.C. § 5552. ECF No. 27 ¶ 219. On May 24, 2024, the State filed its Amended Complaint (ECF No. 27) which sets

---

[1] The State has authority to enforce the CFPA through violations of ILSA because the statute is an "enumerated law" under the CFPA. 12 U.S.C. §§ 5481(12)(R), 5481(14), 5552(a)(1).

forth nearly seventy pages of meticulously detailed factual allegations explaining Defendants' unlawful business practices. And that Amended Complaint sets forth for illustrative purposes ten specific and detailed examples of Texas consumers who relied on Defendants' misrepresentations to their detriment. ECF No. 27 ¶¶ 114-90.

The conduct set forth in the Amended Complaint is remarkable in its breadth and scope. Specifically, Defendants misled consumers—the most vulnerable in society, by design[2]—across a host of dimensions. Defendants' misleading and deceptive operations have a multitude of discrete components, ranging from Defendants' (1) use of literally fake home advertisements to lure consumers into transactions, to (2) false representations about whether the land Defendants sell is hooked up with basic utilities, to (3) lies about how the funds that property owners pay into a POA are actually used, to (4) multiple other deceptive activities. Defendants' Motion to Dismiss seizes on the sheer breadth of the misconduct at issue in an apparent effort to confuse the issues and water down the seriousness of the allegations, such as by cherry-picking certain less-egregious allegations in isolation and then implying the State's entire complaint is about those cherry-picked incidents. *See, e.g.*, Motion to Dismiss at 10 (implying that the State's complaint is principally about whether Defendants improperly "conduct rushed closing where paperwork" is not translated). In actuality, however, Defendants' conduct is severe, pervasive, and highly culpable.

The State's Amended Complaint comprehensively documents Defendants' many misleading and deceptive activities at great length. For simplicity and for purposes of responding to Defendants' Motion to Dismiss, the State summarizes some of the most significant allegations about Defendants' systemic conduct as follows:

***First***, to lure consumers into transactions, Defendants create fake social media accounts to

---

[2] Defendants deliberately target primarily foreign born and Spanish speaking consumers with limited or no access to credit. ECF No. 27 ¶¶ 1, 3.

list fake properties. ECF No. 27 ¶¶ 47-54. This is done to obtain consumers' contact information and create the false impression of owner-financed transactions. *Id*. To cast a larger net of unsuspecting consumers, Defendants provide their employees with SIM cards which allows them to create multiple fictitious online profiles. *Id*.

**Second**, Defendants advertise to the public (through multiple websites and social media accounts) that the lots sold include all basic city services and that the lots are "move in ready." *Id*. ¶ 55-72. These statements are false. As outlined in the Amended Complaint (*Id*. ¶¶ 116-88), contrary to Defendants' representations, consumers are responsible for paying thousands of dollars to set up city services (*i.e.*, to literally install pipes to connect services) because these services are ***not*** readily available.

**Third**, Defendants routinely deprive consumers of any meaningful use of their lots. *Id*. ¶ 71, 116-88. As outlined in the Amended Complaint (*Id*. ¶¶ 116-88), Defendants misrepresent the date by which lots will be ready for consumers to begin building a structure on and occupy. Some consumers have never been given access and others have had to wait over three years to begin building their homes. *Id*. ¶¶ 136-44, 164-68.

**Fourth**, Defendants have misled and continue to mislead consumers about the nature and function of POAs. *Id*. ¶¶ 18-29, 102-13. Beginning in 2016, Defendants dissolved the five initially established POAs[3] in favor of a single POA for the entire development. *Id*. ¶¶ 102, 104-09. Despite the dissolution, Defendants created the false impression that all five POAs continued to exist and operate. *Id*. ¶¶ 108-09. In addition, contrary to Defendants' representations and despite Defendants' collection of millions of dollars in annual POA dues from consumers, Defendants have failed and continue to fail to make financial expenditures towards improvements needed in

---

[3] From 2011 to 2015, Defendants formed five local POAs, one for each of the five neighborhoods located within the Colony Ridge development. *Id*. ¶¶ 24, 103.

the development. *Id.* ¶¶ 110-13.

The Amended Complaint also goes into detail about how 10 representative consumers have been misled to their detriment by Defendants' conduct.  *Id.* ¶¶ 114-90.

## STATEMENT OF THE ISSUES

This response answers the issues presented as follows: (1) The Court has subject matter jurisdiction because all prerequisites required by the CFPA have been met and the CFPA explicitly permits the State to bring a concurrent claim with the CFPB. (2) The State's claims are not subject to Rule 9(b)'s heightened pleading requirements, but even if they were, the State has pled sufficient facts to establish its claims.

## LEGAL STANDARD

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim survives a motion to dismiss where it alleges "sufficient factual matter" to move from merely conceivable to facially plausible. *Id.*; *Ashcroft v. Iqbal, et al.*, 556 U.S. 662, 678 (2009). The Court "must accept all well-pleaded facts as true, and…view them in the light most favorable to the plaintiff." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (citation omitted). "All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001).

## ARGUMENT

## I.   THIS COURT HAS SUBJECT-MATTER JURISDICTION.

This Court has subject-matter jurisdiction over this action because it is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a)(1), and so presents a federal question under 28 U.S.C. § 1367. Nevertheless, Defendants argue that this Court lacks subject-matter jurisdiction

for two reasons. ***First***, Defendants argue (at 6-7) that this Court lacks subject matter jurisdiction on the basis that the CFPB is constitutionally incapable of receiving the pre-suit notice that is a statutory pre-requisite to the State's federal claims (12 U.S.C. § 5552). ***Second***, Defendants argue (at 7-9) that the CFPA prohibits the State from bringing federal claims regarding conduct that the CFPB and U.S. Department of Justice ("DOJ") are likewise suing over. *See CFPB, et al. v. Colony Ridge Development, LLC, et al.*, Case No. 4:23-CV-04729 (S.D. Tex. filed Dec. 20, 2023) ("*CFPB v. Colony Ridge*"). Both arguments fail.

### A.  The State Complied with the Pre-Suit Notice Requirement.

The State's federal claims against Defendants (and thus federal question jurisdiction in this matter) arise out of the statutory authority Congress ***expressly*** granted to state attorneys general under 12 U.S.C. § 5552. The relevant language of 12 U.S.C. § 5552 is unambiguous: "[T]he attorney general…of any State may bring a civil action…to enforce provisions of this title…and to secure remedies under the provisions of this title or remedies otherwise provided under other law." 12 U.S.C. § 5552(a)(1). There is just one relevant predicate to the State's use of those authorities—the State must notify the CFPB before suing. 12 U.S.C. § 5552(b)(1). And here, the State did so. ECF No. 27 ¶ 219.

Defendants do not dispute that the State provided notice to the CFPB under 12 U.S.C. § 5552. ECF No. 46 at 8. Instead, Defendants argue that the notice was a legal nullity because the CFPB is "unconstitutionally funded" and so "lack[s] authority to ***receive*** [the] . . . notice." ECF No. 46 at 6-7. Defendants make this argument notwithstanding that mere weeks before they filed their Motion, the Supreme Court held that the CFPB ***is*** constitutionally funded. *See CFPB v. Cmty. Fin. Servs. Ass'n*, 601 U.S. 416, 441 (2024) ("The statute that authorizes the [CFPB] to draw money from the combined earnings of the Federal Reserve System to carry out its duties satisfies the Appropriations Clause [of the Constitution]."). So what are Defendants talking about?

Defendants attempt (at 5) to escape the reach of the Supreme Court's holding by claiming that it stands only for the modest proposition that "Congress *could* have satisfied the Appropriations Clause" with regard to the CFPB—not that Congress actually has "done so." In other words, Defendants' contention is that the Supreme Court issued an advisory opinion exhorting that the CFPB *could* be constitutionally funded, but in actuality is not. If the Court finds that argument strange, it is not alone. The dissenters in the Supreme Court's *CFPB v. Cmty. Fin. Servs. Ass'n* case well-recognized and bemoaned the "real-world consequences" that the majority's decision would have. 601 U.S. at 470 (Alito, J., dissenting). After all, the majority's holding that the CFPB was constitutionally funded functionally green-lit the CFPB to continue the many "major changes in consumer protection law" it was pursuing. *Id.* If that is true (and it is), then obviously the CFPB has ample power to perform the ministerial role of accepting the State's notice here.

The Defendants insist (at 5-6) that the CFPB is unconstitutionally funded because it is supposed to draw its funds from the Federal Reserve, but the "Federal Reserve has had no 'surplus funds' and made no deposits to the Treasury since 2022." Defendants' argument thus rests on the flawed premise that the CFPB can draw funds only from a Federal Reserve "surplus." But the relevant statute imposes no such "surplus" limitation. Far from it—the Supreme Court recognized that the statute "authorizes the Bureau to draw money from the ***combined earnings*** of the Federal Reserve," full stop. 601 U.S. at 441 (emphasis added); 12 U.S.C. § 5497 ("combined earnings"). The Federal Reserve's possession of "surplus funds" (whatever that means) is irrelevant. Moreover, the Bureau can "*also* retain and invest unused funds from year to year," 601 U.S. at 422 (emphasis added)—so, even if for some reason the Federal Reserve could not fund the Bureau one year, the Bureau would nevertheless have alternative and legitimate sources of funding.

In any event, the statutory notice requirement set forth in 12 U.S.C. § 5552(b)(1)(A) is not jurisdictional and requires no action of any kind by the CFPB.[4] So it is not apparent how, even if there were a defect in the CFPB's funding, such defect could have any bearing on the State's clear statutory authority to assert the federal claims it asserts here.

### B.  The CFPA Permits Contemporaneous Federal and State Enforcement.

Defendants' contention (at 7-9) that the State cannot bring overlapping federal claims as federal enforcers also fails. Indeed, the relevant language of the CPFA provides the exact opposite.

1.      "The starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'" *Arif v. Mukasey*, 509 F.3d 677, 681 (5th Cir. 2007) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409-10 (1993)). And here the text—12 U.S.C. § 5552(a)(1)—clearly authorizes State attorneys general to bring claims enforcing the CFPA, regardless of overlapping federal enforcement. The text says:

> **Except as provided in paragraph (2)**, the attorney general (or the equivalent thereof) of any State may bring a civil action in the name of such State in any district court of the United States in that State or in State court that is located in that State and that has jurisdiction over the defendant, to enforce provisions of this title or regulations issued under this title, and to secure remedies under provisions of this title or remedies otherwise provided under other law.

Thus, the State clearly has categorical authority to enforce the CFPA. The text provides only one "except[ion]" to this authorization—which it sets forth in "paragraph (2)." 12 U.S.C. § 5552(a)(1). And paragraph (2) merely limits "State action against national bank or Federal savings association[s]." *Id.* § 5552(a)(2). Defendants do not purport to be a national bank or Federal

---

[4] "While jurisdictional rules are absolute bars, 'claim-processing' rules, which speak more to the procedural obligations of the parties, may be waived or overcome by considerations of equity such that noncompliance does not remove the court's ability to consider the plaintiff's substantive claims." *See Pennsylvania by Shapiro v. Mariner Fin., LLC*, No. CV 22-3253, 2024 WL 169654, at *7 (E.D. Pa. Jan. 12, 2024) (citing *Henderson v. Shinseki*, 562 U.S. 428, 435, 131 S.Ct. 1197, 179 (2011) (So-called claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times" which "should not be given the jurisdictional brand").

savings association, so this exception is irrelevant here. And no other language in the text could plausibly bar the State's suit. *See Pennsylvania v. Navient Corp.*, 967 F.3d 273, 284 (3d Cir. 2020) (holding that "the plain language of the [CFPA] permits state concurrent actions.").

Despite the clear statutory language, Defendants ask this Court to read in a *sub silentio* bar on overlapping federal and State enforcement. The problem for Defendants is that when Congress wants to preclude overlapping suits, it does so specifically. And "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Arif*, 509 F.3d at 681 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (internal quotation omitted). Indeed, Congress showed ***in the CFPA*** that it knew exactly how to foreclose overlapping actions. For example, 12 U.S.C. § 5514(c)(3)(B) provides that when one of the Federal Trade Commission ("FTC") and CFPB is enforcing a certain law, "the other agency may not, during the pendency of that action" enforce as well. And 12 U.S.C. § 5538(b)(6) provides a narrow limitation on a state's authority to enforce certain mortgage rules "during the pendency of [an] action instituted by or on behalf of the [CFPB] or the [FTC]." (Those rules are not at issue here). The presence of those carveouts, but not one that would be relevant to *this* action, is enough to foreclose Defendants' argument. *See Arif*, 509 F.3d at 681.

Several other federal consumer protection statutes also exemplify Congress' ability to authorize state enforcement and prohibit concurrent state claims.[5] But there is also a wide range of federal statutes that ***do not*** forbid state enforcement actions during the pendency of a parallel federal action.[6] And the CFPA is one of those.

---

[5] *See, e.g.*, 15 U.S.C. § 45b; 15 U.S.C. § 45c; 15 U.S.C. § 7804; 15 U.S.C. § 7706; 15 U.S.C. § 6504; 15 U.S.C. § 1679h; 15 U.S.C. § 6103; 15 U.S.C. § 5712;15 U.S.C. § 1681s; 15 U.S.C. § 2073; and 21 U.S.C. § 337.

[6] *See, e.g.*, 12 U.S.C. § 2607 (Real Estate Settlement Procedures Act); 15 U.S.C. § 1640 (Truth in Lending Act); 49 U.S.C. § 14711 (Motor Carrier Safety Act).

**2.**     Defendants contend (at 7) that in combination "the pre-suit notice provision" and "intervention provision" (12 U.S.C. §§ 5552(b)(1),(2)) contain the requisite text to foreclose overlapping State enforcement. But neither provision contains a word of language precluding overlapping State enforcement. Defendants contend (at 8) that the notice requirement would become a "nullity" if States can sue on "theories upon which the CFPB has already sued," apparently because—in Defendants' view—it would allow the States to "interfere with the CFPB's own activities." But if the CFPB concludes that a state action is indeed interfering with its activities or interests, it is allowed to intervene under 12 U.S.C. § 5552(b)(2)(A). That was Congress's solution to the potential problem of "interference."

Defendants contend, however, (at 8) that *if* "the CFPB already filed suit" and then it "intervene[d] in a CFPA case initiated by a state," such intervention would violate the rule that a plaintiff (here, the CFPB) cannot sue a defendant twice "in the same court over the same subject matter." But at most that means that in certain situations the CFPB's intervention power might be defective; *not* that *states* are precluded from bringing suit. And the CFPB would have other tools at its disposal in that setting to prevent interference, such as seeking consolidation of the cases.[7]

In any event, the State's lawsuit against Defendants is materially different from the CFPB's and DOJ's ongoing lawsuit in *CFPB v. Colony Ridge* in at least three ways. *First*, the State's lawsuit includes four counts against **eight** Defendants, including Colony Ridge, Inc., T-Rex Management, Inc., John Harris (individually), Houston El Norte Property Owners Association, Inc., and CH&P Management, LLP. The federal lawsuit, by contrast, involves only four

---

[7] Defendants' reliance on *Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292 (D.N.M. 2018), is misplaced. The *Navajo Nation* Court dismissed CFPA claims filed by a tribal government against a national bank after the CFPB had settled similar claims. *Navajo Nation* is distinguishable because it was dismissed as *res judicata*—the court concluded that the "CFPB adequately represented the [Tribe's] interest" when it signed a consent order regarding the same underlying conduct. *Id.* at 1307. Nothing in the *Navajo Nations* case suggests an implied prohibition on concurrent state attorney general claims under the CFPA.

defendants. Second, the federal lawsuit involves violations of the Equal Credit Opportunity Act and the Fair Housing Act, which the State's lawsuit does not allege. Third, only two of the State's claims rely on the CFPA and its Amended Complaint includes counts which arise from conduct not addressed by *CFPB v. Colony Ridge* (specifically, the State's claims against Houston El Norte Property Owners Association, Inc. and CH&P Management, LLP). In sum, the State's federal claims are validly brought and the Court has subject-matter jurisdiction over this suit.[8]

## II.    THE STATE PROPERLY PLED CLAIMS AUTHORIZED UNDER THE CFPA.

### A.    Rule 8 Applies to the State's CFPA Claims.

The applicable pleading standard for claims brought under the CFPA is Rule 8, not the Rule 9(b) pleading standard as Defendants assert. Defendants' plea for the Court to apply Rule 9 has been rejected repeatedly in the courts as being "without merit." *CFPB v. All Am. Check Cashing, Inc.*, No. 3:16-CV-356-WHB-JCG, 2016 WL 11635752, at *2 (S.D. Miss. July 15, 2016).[9] And that is for good reason—a Rule 9(b) standard would be "inconsistent with the remedial nature of consumer protection statutes." *CFPB v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1373 (N.D. Ga. 2015). The State alleges certain Defendants should be liable for deception under the CFPA because they made material misrepresentations that misled consumers. "Such a claim is not a claim for fraud because it has no scienter or injury requirement." *All Am. Check Cashing, Inc.*, 2016 WL 11635752, at *3. Therefore, Rule 8 applies to the State's CFPA claims.

---

[8] Because the Court has subject-matter jurisdiction over the State's federal claims, it has supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367.

[9] *See CFPB v. Navient Corp.*, 3:17-CV-101, 2017 WL 3380530, at *24 (M.D. Pa. Aug. 4, 2017); *CFPB v. Ocwen Fin. Corp.*, No. 17-80495-CIV, 2019 WL 13203853, at *14 (S.D. Fla. Sept. 5, 2019); *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 768 (S.D.N.Y. 2018) ("The Court has identified no case in which this Court or the Court of Appeals has applied Rule 9(b)'s heightened pleading standard to claims of deception or abusive acts or practices under the CFPA.").

The State's claims regarding federal ILSA violations brought through the CFPA likewise do not sound in fraud and do not warrant application of the 9(b) standard. The ILSA violations allege that Defendants were required to provide a Property Report to all consumers and failed to do that. ECF No. 27 ¶ 236. They were also required to provide contracts, deeds, or other transaction documents in the language in which the sales campaign was conducted. *Id.* ¶ 238. Those violations are not ones for which Rule 9(b)'s fraud standard is applicable.

### B. Alternatively, the Amended Complaint Meets Rule 9(b)'s Heightened Pleading Standard.

In any event, the State's Amended Complaint would easily satisfy Rule 9(b). The State identified "the who, what, when, where, and how" Rule 9(b) requires. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). The "who" is each Defendants' agent; the "what" is each misrepresentation made by Defendants; the "when" is the date of purchase of the lot; the "where" is on Defendants' sales property; and the "how" is by the verbal statements made by each of Defendants' agents. The State's Amended Complaint goes through each of those allegations in meticulous detail spanning 11 pages of 10 representative examples of misleading and deceptive behavior. *See* ECF No. 27 ¶¶ 116-90. For example, the first representative (at ¶¶ 116-20) example identifies specific salespersons ("who"), specific misrepresentations about how "city services/utilities" were included in a property purchase ("what"), the approximate date this occurred (July 8, the "when"), the location: Colony Ridge ("where"), and the manner of deception: oral representations by the salespersons ("how").

Against this comprehensive and meticulous set of examples, Defendants cannot credibly press their argument that they are "in the impossible position of negating that some unknown, undisclosed buyer was misled." ECF No. 46 at 24. As this Court has held, "the application of Rule 9(b) is context-specific." *Lee v. Samsung Elecs. Am., Inc.*, No. 4:21-CV-01321, 2024 WL 578572,

at *4 (S.D. Tex. Feb. 13, 2024) (citing *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009)). The State is not required to "state all facts pertinent to a case in order to satisfy the requirements of Rule 9(b)." *Mitchell Energy Corp. v. Martin*, 616 F. Supp. 924, 927 (S.D. Tex 1985). The facts pled are more than adequate to put Defendants on notice.[10]

### C.  The State's Prayer for Relief is Not Grounds for Dismissal.

Defendants' argument (at 25) that the State's specific prayer that "civil penalties" be awarded for violation of the CFPA be dismissed is premature. "Whether a claim for relief should be dismissed under Rule 12(b)(6) turns not on whether all of the relief asked for can be granted, but whether the plaintiff is entitled to *any relief*." *Mott's LLP v. Comercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 791 (W.D. Tex. 2020)(emphasis added); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (4th ed. 2024). Defendants' invitation for the Court to carve civil penalties out from this suit is not proper for a motion to dismiss. Moreover, Defendants' argument is premised (at 25) on the fact that the "CFPB is not a party" to this suit. But this suit and the CFPB's suit could become consolidated. If that happens, Defendants' argument about whether civil penalties can be awarded would become moot.

## III.   THE STATE PROPERLY PLED CLAIMS AUTHORIZED UNDER THE TEXAS DTPA.

The State brought valid DTPA claims against Defendants under six separate provisions of that statute. ECF No. 27 ¶¶ 191-205 (DTPA §§ 17.46(a), (b)(1), (b)(2), (b)(5), (b)(9), (b)(12)). These claims are subject to Rule 8's pleading standard and do not require the presence of, or harm to, specific consumers. But they would in any event also survive Rule 9(b)'s pleading standard. And all of Defendants' claim-specific arguments fail, as discussed below.

---

[10] The Amended Complaint used initials in order to protect consumers, but the State has provided Defendants with the specific names for each identified consumer.

**A. Rule 8 Applies to the State's DTPA Claims, and the State may Bring these Claims Regardless of the Presence of, or Injury to, Consumers.**

1.     Like the State's claims under the CFPA, the applicable pleading standard for the State's DTPA claims is Rule 8, not the Rule 9(b) pleading standard Defendants assert. *Hanna*, 114 F. Supp. 3d at 1372-73. As described above, Rule 9(b)'s heightened pleading standard is "inconsistent with the remedial nature of consumer protection statutes." *Id.* at 1373; *see also* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1296 (4th ed. 2024). The State brought this action in the public interest and alleges that Defendants should be held liable for deception under the DTPA because they made misrepresentations to consumers. "Such a claim is not a claim for fraud because it has no scienter or injury requirement." *All Am. Check Cashing, Inc.*, 2016 WL 11635752, at *3.

Additionally, the DTPA is modeled after Section 5 of the FTC Act. DTPA § 17.46(c)(1). Courts have held that the FTC's actions under Section 5 of the FTC Act are not subject to Rule 9(b).[11] "Unlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 [FTC Act] violation." *FTC v. Consumer Health Benefits Ass'n*, No. 10 CIV. 3551 ILG RLM, 2012 WL 1890242, at *6 (E.D.N.Y. May 23, 2012). Like the FTC Act, the DTPA does not require the State to prove scienter, reliance, or injury to sue under DTPA § 17.47. Instead, it must show that it "has reason to believe that any person is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful by this subchapter, and that proceedings would be in the public interest." DTPA § 17.47(a).

2.     For a similar reason, where, as here, the Consumer Protection Division ("CPD")

---

[11] *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005); *FTC v. Debt Relief USA Inc.*, No. 3:11-CV-2059-N, 2012 WL 13024099, at *3 (N.D. Tex. Apr. 19, 2012).
.

initiates a DTPA lawsuit, the presence of a consumer, or injury to one is not required. As the Texas Supreme Court has recognized, the DTPA "differentiates between the [public and private] remedies available to correct violations of the Act." *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980). "A [person] may have engaged in a deceptive act by presenting any misleading information." *Id*. And "[a]ny person engaging in such deceptive practices may be subjected to a suit by the Consumer Protection Division." *Id.* DTPA § 17.47 makes this crystal clear because it allows the CPD to enforce against deceptive acts or practices "declared to be unlawful by this subchapter, and that proceedings would be in the public interest." DTPA § 17.47(a). Thus, for the CPD's actions, "[o]nce a representation is made, it becomes a 'false, misleading, or deceptive' act or practice as a matter of law if it falls within the 'laundry list' of acts enumerated in sec. 17.46(b)." *Lone Star Ford, Inc. v. McGlashan*, 681 S.W.2d 720, 723 (Tex. App.—Houston [1st Dist.] 1984, no writ) (citing *Franklin v. State*, 631 S.W.2d 519 (Tex. App.—El Paso 1982, no writ)). No more is required.

**3.**     Defendants' arguments (at 11) in favor of applying Rule 9(b)'s pleading standard here improperly conflate the ***State's*** authority to bring suit with ***private parties'*** cause of action under a separate DTPA provision (DTPA § 17.50(a)). Under that ***separate*** "private suit" provision, the plaintiff must establish that he is a "consumer." *Riverside*, 603 S.W.2d at 173. But consumer status "only describes the class of [private] persons entitled to bring suit"—"it does ***not*** define the class of persons subject to liability under the DTPA," such as where the CPD brings suit. *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 706 (Tex. 1983) (emphasis added). All of Defendants' authorities in support of the heightened pleading standard (at 11) are distinguishable on this private versus public enforcer basis. And that distinction is highly material because, unlike the State's claims, private consumer actions require establishing that the defendants' action

15

produced damages and reliance on the defendants' misrepresentations. DTPA § 17.50(a); *see also Strickland v. Bank of New York Mellon*, 838 F. App'x 815, 819 (5th Cir. 2020) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)). In that way, private litigants (unlike the State) are held to a burden similar to the fraud claims which trigger 9(b). *Grubbs*, 565 F.3d at 188-89 ("reliance and damages" are the hallmarks of claims requiring 9(b) pleading). But for those reasons, the Defendants' authorities are irrelevant to the pleading standard here.

Alternatively, even if this Court determines that the heightened pleading standard of Rule 9(b) applies to the State's DTPA claims, the Amended Complaint meets that standard for the same reasons as shown above regarding the State's CFPA claims.[12]

### B.   The State Properly Pled Defendants' Violations of DTPA § 17.46(b)(1).

Defendants violated DTPA § 17.46(b)(1)'s prohibition on "passing off goods or services as those of another" by advertising lots that Defendants do not own as being for sale by Defendants. ECF No. 27 ¶¶ 47-54, 201. Defendants argue (at 12) that they are not liable because they were not "passing off *their* lots as belonging to anyone else." But DTPA § 17.46(b)(1) contains no language specifying *whose* goods or services a defendant must misrepresent to be liable—it simply prohibits "passing off goods or services as those of another." And here the Defendants did that by passing off lots that had no relation to them as their own. It is also irrelevant that Defendants' consumers did not actually *obtain* these "fictitious properties," *contra* ECF No. 46 at 12—liability attaches to Defendants' deceit regardless of that happenstance. *See*, *e.g.*, *Mother & Unborn Baby Care of N. Tex., Inc. v. State*, 749 S.W.2d 533, 536-40 (Tex. App.—Fort Worth 1988, writ denied).[13]

---

[12] *See* ECF No. 27 ¶¶ 114-90; *see also Gilmour v. Blue Cross & Blue Shield of Ala.*, 2021 WL 1196272, at *8 (E.D. Tex. Mar. 30, 2021) (even when applicable, "Rule 9(b)'s heightened pleading requirement for fraud should be relaxed in the context of government-enforcement actions").

[13] Defendants rely (at 12) on *Tweedell v. Hochheim Prairie Farm Mut. Ins. Ass'n*, 1 S.W.3d 304 (Tex. App.—Corpus Christi 1999, no pet), for the misleading suggestion that a DTPA § 17.46(b)(1) violation is contingent on "*acquired*

### C.  The State Properly Pled Defendants' Violations of DTPA § 17.46(b)(2).

Defendants violated DTPA § 17.46(b)(2)'s prohibition on "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services" by advertising and listing lots for sale by individuals who do not exist, and representing that lots sold would include services provided by POAs that had in fact been terminated. ECF No. 27 ¶¶ 47-54 (the lots), 18-29, 102-13 (the POAs), 202.

Defendants are incorrect (at 12-13) that they could not have "caused confusion" over goods or services if "there were no 'consumers' of lots in any false listings," and that there must be evidence of "actual confusion" to state a violation of DTPA § 17.46(b)(2). As discussed, "consumer status" is not an element for the State's DTPA § 17.47 claims. *See supra* at 14-16. Moreover, for purposes of DTPA § 17.46(b)(2), a person causes "confusion or misunderstanding" when misrepresentations as to goods or services are ***likely*** to confuse or mislead consumers.[14] The State has pled numerous, specific examples where Defendants misrepresented the source of real estate by advertising and listing lots for sale by individuals who do not exist and/or who had no ownership or ability to sell said lots. ECF No. 27 ¶¶ 4, 47-54. The State has also pled that Defendants dissolved five POAs and improperly "merged" them into Defendant Houston El Norte Property Owners Association, Inc. *Id.* ¶¶ 18-29, 102-13. Despite this "merger," Defendants misrepresented the source of POA services to consumers seeking to buy lots by continuing to do business as, and advertising under, assumed names corresponding with the now-dissolved neighborhood POAs. *Id.*

---

goods." But the *Tweedell* plaintiffs could not make out DTPA claims because they neither "acquired" *nor* "sought" goods or services—not just because they did not "acquire" them. *Id.* at 307.

[14] *See, e.g.*, *Pope v. Rollins Protective Servs. Co.*, 703 F.2d 197, 199-203 (5th Cir. 1983) (defendant "caused confusion," despite plaintiff being unaware of the good's true features at the time of the misrepresentation); *Sergeant Oil & Gas Co., Inc. v. Nat'l Maint. & Repair, Inc.*, 861 F. Supp. 1351, 1361 (S.D. Tex. 1994).

Defendants also argue (at 13) that the State did not show "Defendants knew" that POA services would be terminated. But lack of knowledge or intent is not a permissible defense to DTPA claims that do not expressly require intent or knowledge, including DTPA § 17.46(b)(2). *See Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex. 1980). Defendants' "knowledge of the illegality of [their] act[s] or practice[s]" is a factor in determining an appropriate penalty, not liability. *Compare* DTPA § 17.46(a) *with* DTPA § 17.47(g). As such, the State has pled plausible claims that it reasonably believes that Defendants are, have, or are about to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, in violation of DTPA § 17.46(b)(2).

### D.  The State Properly Pled Defendants' Violations of DTPA § 17.46(b)(5).

In ***nine*** ways, Defendants violated DTPA § 17.46(b)(5)'s prohibition on "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." ECF No. 27 ¶ 203. Defendants take issue (at 13) with only "four" of those claims—misrepresentations regarding (1) the identity of the property owner, (2) whether property could be returned, (3) the proration of property taxes, and (4) the nature and identity of the POAs. All fail.

**(1) Identity of property owner:** Defendants argue (at 13) that § 17.46(b)(5) has a "consumer-status" requirement. As explained (*supra* at 15-17), that argument has no purchase since it is the State—and not an individual consumer—that is enforcing. Defendants also misleadingly argue (at 13) that the State did not identify any misrepresentation in the allegation that Defendants advertised and represented lot sales as "owner-financed" when Colony Ridge was actually the seller, financing the lots. But the State pled that Defendants created a scheme in which employees created multiple fraudulent social media accounts to post lots for sale. This scheme

misled buyers into thinking that a single individual, rather than an entity like Colony Ridge, was listing the lots. ECF No. 27 ¶¶ 47-54. By employing this tactic, Defendants clearly misrepresented the characteristic of ownership of the lots, violating DTPA § 17.46(b)(5). *See Pennington,* 606 S.W.2d at 687 (noting the objective of DTPA § 17.46(b)(5) is to "ensure that descriptions of goods or services offered for sale are accurate").

    **(2) The availability of returns:** Next, Defendants argue (at 13) that the State fell short of the Rule 9(b) standard when alleging Defendants "inaccurately informed consumers that . . . Colony Ridge would accept 'returns' of lots which they had sold to consumers." As explained (*supra* at 14-16), however, Rule 9(b) does not apply. But the State satisfied that standard anyway. The State specifically alleged that, during the closing process, Defendants have a practice of informing consumers that they will "take back" lots from buyers who can no longer afford payments. ECF No. 27 ¶ 86. Further, the State detailed how Defendants will give consumers a document containing a telephone number to call when they desire to "return their property." *Id.* But Defendants do *not* accept returns. Defendants also argue (at 14) that the State did not provide adequate specifics and relied on general terms like "pattern and practice." But the State detailed Defendants' specific pattern and practice by pleading a specific consumer closing process experience. ECF No. 27 ¶¶ 136-44.

    **(3) Prorating property taxes:** As alleged in the Amended Complaint, Defendants misrepresented that first-year property taxes would be prorated. ECF No. 27 ¶¶ 88, 93, 203(h), 205(c). Every time a consumer received certain transactional documents, they were informed that the agreement had certain characteristics, such as prorated taxes, which those agreements did not actually have. Defendants contend (at 14) that their misrepresentations on this score constitute contractual breaches rather than DTPA violations. But this repeated deceptive conduct rises above

19

a mere breach. Defendants' reliance on *Crawford v. Ace Sign,* is lacking. *Crawford* held that "[a]n allegation of a mere breach of contract, *without more*," does not constitute a DTPA violation. *Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14 (Tex. 1996) (emphasis added). Here, by contrast, Defendants' practice of repeated, knowing misrepresentations is precisely the kind of conduct the DTPA is designed to protect against. Namely, DTPA claims possessing some overlap with contractual breach survive where, as here, the defendant "never intended" to fulfill the contract in the first place. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006).

**(4) The purposes, objectives, and benefits of property owners' associations:** Defendants argue (at 14) that "[t]he Complaint lacks Rule 9(b) specificity as to the 'purposes, objectives, and benefits' that any consumer was told" as to "'services provided to consumer-members of the POAs.'" Again, Rule 9(b) does not apply. *See supra* at 14-16. But even if it did, the State complied by pleading numerous misrepresentations by Defendants about the purposes, objectives, and benefits of Defendants' POAs. ECF No. 27 ¶¶ 18-29, 102-13, 203(i). These representations were false because: (1) the POA has no "common property" to protect since Defendants conveyed all the property to third parties; (2) consumers who purchase land cannot meaningfully represent their communities; and (3) Defendants do not levy assessments to benefit each respective neighborhood. *Id*. As such, the State has sufficiently pled that Defendants misrepresented the purposes, objectives, and benefits of POA services provided to owners.

### E.  The State Properly Pled Defendants' Violations of DTPA § 17.46(b)(9).

Defendants in numerous respects violated DTPA § 17.46(b)(9)'s prohibition on "advertising goods or services with intent not to sell them as advertised." ECF No. 27 ¶ 204. Defendants contend (at 14) that "Several" of these theories fail, principally because, in Defendants' view (at 15), the allegations do not satisfy the "scienter element of intent." But the State has pled overwhelming facts describing Defendants' elaborate schemes to advertise lots and POA services

with intent not to provide them as advertised. Those specific facts include but are not limited to: directing employees to use fake names and fictitious online profiles, post unrelated photographs of land for lot listings, and to not tell consumers where listed properties were located. ECF No. 27 ¶¶ 47-54. The State has also pled facts describing Defendants' systematic, intentional ruse to terminate neighborhood POAs, diminish or eliminate POA services, and continue to advertise the terminated POAs and POA services that they do not provide. *See id.* ¶¶ 18-29, 102-13. This well-exceeds the requirements to make out a DTPA § 17.46(b)(9) violation. And it is irrelevant that Defendants did not own the fake lots, and that consumers did not buy them.[15]

### F.  The State Properly Pled Defendants' Violations of DTPA § 17.46(b)(12).

Defendants violated DTPA § 17.46(b)(12)'s ban on "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Namely, their conveyance documents falsely or misleadingly (1) represent that consumers can immediately begin occupying/developing lots; (2) promise that property taxes will be pro-rated for the purchase year; and (3) make a range of representations about the POA's attributes and functions.[16] ECF No. 27 ¶ 205.

*First*, Defendants are wrong (at 15-16) that these allegations recite only a "breach[] of contract" claim. The transaction documents state that "possession . . . will be delivered . . . at closing," yet Defendants know at the time of sale that they will not deliver full possession. ECF No. 27 ¶ 90. Defendants have a pattern of preventing access or forbidding development on land after closing. *See*, *e.g.*, ECF No. 27 ¶ 132 (refusing access to buyers who merely wanted to clear

---

[15] *Contra* Motion to Dismiss at 15; *see Mother & Unborn Baby Care of N. Tex., Inc.*, 749 S.W.2d at 536-41 (DTPA liability where "women were led to believe that [pro-life] Center was an abortion clinic").

[16] The contracts also include a deceptive waiver-of-reliance provision. ECF No. 27 ¶ 91. Contrary to Defendants' contention (at 16), the DTPA provides that "[a]ny waiver by a consumer of the provisions of [the DTPA] . . . is unenforceable." *Thomas v. Nat'l Collector's Mint, Inc.*, No. CV H-18-0348, 2018 WL 6329841, at *9 (S.D. Tex. Dec. 4, 2018). Including this waiver violates DTPA § 17.46(a)'s general prohibition on misleading acts and practices. Tellingly, such waivers are not present in standard Texas Real Estate Commission contracts.

their land). Having a policy to not deliver the promised possession is deceptive conduct extending beyond a mere breach, and is actionable under DTPA § 17.46(b)(12). *See Chapa*, 212 S.W.3d at 305; *see also McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015) ("[T]he Texas Supreme Court has never held that underlying conduct that breaches an agreement cannot violate the DTPA merely because it also breaches an existing contractual obligation.").

A DTPA claim arises if "the defendant did not intend to perform on the contract at the time the contract was made." *Marek v. Lehrer*, No. 03-17-00509-CV, 2018 WL 6217566, at *9 (Tex. App.—Austin Nov. 29, 2018, no pet.). The situation here is like that in *Junior Volleyball Ass'n of Austin v. Summit Hosting LLC*;[17] there the plaintiff alleged the defendant promised "30 days of [data] backup retention" but later admitted it was "company policy to keep only 15 days of backups." The *Summit Hosting* Court held "the misrepresentations . . . were false" and that the DTPA claims survived the motion to dismiss. *Id.* In the instant case, Defendants do the same—promise one thing but have a "policy" of doing something different.

*Second*, Defendants are wrong for the same reason (at 17) to characterize as mere "breach of contract" the fact that their sales documents misleadingly "state that property taxes will be prorated" while the "deeds provide the opposite." The sales documents that make this misstatement regarding property taxes convey lies, plain and simple. And, when their own documents lie in this manner, Defendants cannot credibly hide behind the fact that the State did not allege what Defendants may have "*told* a consumer." *Contra* ECF No. 46 at 17 (emphasis added).

*Third*, Defendants' bare reliance (at 17-18) on the Rule 9(b) standard to defeat the POA-related DTPA § 17.46(b)(12) allegations fails for the reasons explained. *See supra* at 14-16. Regardless, the State has pled this claim with ample specificity. The State pled that as part of their

---

[17] No. 1:17-CV-756-LY, 2018 WL 4343446, at *5 (W.D. Tex. July 17, 2018), *report and recommendation adopted*, No. 1:17-CV-756-LY, 2018 WL 4343430 (W.D. Tex. Aug. 6, 2018).

purchase transaction with Defendants, consumers agree to become members of a nonprofit POA controlled by Defendants, to pay mandatory annual dues, and to be bound by that nonprofit POA's "governing documents." ECF No. 27 ¶¶ 8, 26-29, 34, 110 (governing instruments include "governing bylaws and declarations of covenants, conditions, and restrictions"). In exchange, Defendants' POA commits to protect common areas, use assessments to benefit current members, and provide opportunities for POA-resident-member representation, and Defendants represented these obligations in flyers they distributed and on their website. *See id.* ¶¶ 110-11. The State has pled facts showing Defendants' representations were false: Defendants had conveyed away all of their common property, systematically restricted resident-members' ability to represent their communities, and do not spend POA funds collected to benefit current residents. *See id.* ¶¶ 18-29, 102-13. Thus, the State has sufficiently pled Defendants' violations of DTPA § 17.46(b)(12) for misrepresentations of agreements with POA members and prospective members.

## IV.   THE STATE PROPERLY PLED CLAIMS FOR FRAUD IN REAL ESTATE.

As discussed *supra*, most of the State's Amended Complaint does not rely on classic fraud theories, or trigger Rule 9(b)'s heightened pleading standard. The Amended Complaint does, however, allege one discrete count of fraud in Count 2 regarding Defendants' representation to consumers that "city services were available at lots as a means of inducing consumers to purchase a lot to build a home," even though "many lots purchased by consumers lacked the necessary infrastructure." ECF No. 27 ¶ 210; *see also id.* ¶¶ 55-72 (detailed allegations). Through this fraud, Defendants violated the statutory bar on fraud in real estate transactions. Tex. Bus. & Com. Code §27.01. Defendants' arguments why this claim fails are all meritless.

*First*, Defendants are wrong (at 18) that the statutory fraud in real estate claim fails because it is about only "loan transaction[s]," which are not swept up in statutory real estate fraud. To the contrary—the State very clearly pled that Defendants **sell real estate** to consumers, as is evidenced

by, among other things, the Land Purchase Agreements and deeds that form core elements of the Amended Complaint. *See, e.g.*, ECF No. 27 ¶¶ 6, 33, 61, 71, 86, 88, and Section H. And Count 2 clearly states that the basis of the claim are the sales of lots to consumers. *Id.* ¶¶ 210, 212-14.[18] Defendants' focus on "loan transactions" conflates *other* claims in the Amended Complaint (which do attack Defendants' loans) with *this* one (which does not).

*Second*, Defendants argue (at 19-20) that this claim fails to satisfy Rule 9(b). But Defendants ignore that the State identified specific consumers who relied on Defendants' misrepresentations in making the decision to purchase a lot. ECF No. 27 ¶¶ 114-90. These specific examples are detailed well beyond what Rule 9(b) requires, such as the allegations about "consumer L.J.T." which occurred "[o]n or about May 23, 2015," for a lot purchase of "approximately $25,000." *Id.* ¶ 180. The Amended Complaint explains in detail that this buyer was told that "utilities were included with the lot" and that "all [he] would need to do was call the utility companies to set up the services." *Id.* ¶ 181. But that was fraudulent in the extreme—"[a]fter the transaction," L.J.T. discovered he "would need to pay over $5,000 to install a transformer and a water meter to be able to access basic utilities." *Id.* ¶ 182. And the Amended Complaint adds such granular further specifics as the fact that "[o]n April 11, 2022" a particular document was "recorded in the real property records of Liberty County, Texas" regarding this exact purchase. It beggars belief for Defendants to say (at 19) that they lack adequate notice unless the State pleads further facts regarding "necessary infrastructure" or a "certain date."[19]

---

[18] *See also Tukua Invs., LLC v. Spenst*, 413 S.W.3d 786, 797 (Tex. App.—El Paso 2013, pet. denied) (fraud in real estate claim only requires that the "parties entered into a valid contract for the sale of real estate, and as a result, a potential sale or purchase of real estate was created"); *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 823 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("A transaction occurs when there is a sale or a contract to sell real estate or stock between the parties.").

[19] *See Mitchell Energy*, 616 F. Supp. at 927 (no requirement to "state all facts pertinent to a case in order to satisfy the requirements of Rule 9(b)."); *Gilmour*, 2021 WL 1196272, at *8 ("Rule 9(b)'s heightened pleading requirement for fraud should be relaxed in the context of government-enforcement actions").

Against this backdrop, Defendants' arguments (at 20-22) about "reliance" are also frivolous. True, fraud depends on a showing of actual reliance. But, as Defendants recognize (at 20), "[o]rdinarily justifiable reliance is a fact question." Courts are loathe to resolve reliance at a motion to dismiss. And here, the facts pled show that the consumers had justifiable reliance. One does not ordinarily expect that a large real estate developer and seller would operate a business model so defective as to fail to even provide ***utility-ready*** property for residential home purchasers. Defendants' *caveat emptor* claim (at 21) that they may lie to buyers and it is the buyers' obligation to "obtain[] a survey" or "order[] an inspection" is baseless.

*Third*, Defendants' argument that damages for this claim are limited by a "two-year lookback period" fails.[20] This would dismiss no part of the Amended Complaint and can be resolved at later stages of the proceedings.[21]

## CONCLUSION

The Court should deny the Motion. If relief is granted, the State requests leave to amend pursuant to the Federal Rules of Civil Procedure.


DATED: June 28, 2024

---

[20] *See Avila v. State*, 252 S.W.3d 632, 646 (Tex. App.—Tyler, 2008, no pet.) (rejecting defendant's argument that restitution is limited to the two years before suit was filed as restitution is different from damages); *Thomas v. State*, 226 S.W.3d 697, 710 (Tex. App.—Corpus Christi 2007, pet. dism'd) (State's DTPA claim for restitution was not subject to the statute of limitations).

[21] *See Arvie v. Dodeka, LLC*, No. H-09-1076, 2009 WL 10711716, at *4 (S.D. Tex. Dec. 31, 2009) (declining to dismiss claim under 12(b)(6) because "statute of limitations issue is properly raised in a motion for summary judgment").

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**RYAN S. BAASCH**
Chief, Consumer Protection Division

*/s/ Richard Berlin*

RICHARD BERLIN
Attorney-in-Charge
TX Bar No.: 24055161
S.D. Tex. Bar No.: 724520
Email: rick.berlin@oag.texas.gov
DANIEL ZWART
TX Bar No.: 24070906
Email: daniel.zwart@oag.texas.gov
KAYLIE BUETTNER
TX Bar No.: 24109082
Email: kaylie.buettner@oag.texas.gov
MEREDITH SPILLANE
TX Bar No.: 24131685
Email: meredith.spillane@oag.texas.gov
Assistant Attorneys General
Consumer Protection Division
Office of the Attorney General
808 Travis Street, Suite 1520
Houston, Texas 77002
Tele: 713-223-5886/Fax: 713-223-5821

GABRIELA I. MARTINEZ
TX Bar No.: 24085454
Email: gabriela.martinez@oag.texas.gov
NORMAN R. CAHN
TX Bar No.: 24125161
Email: norman.cahn@oag.texas.gov
Assistant Attorneys General
Consumer Protection Division
Office of the Attorney General
401 E. Franklin Ave, Suite 530
El Paso, TX 79901
Tele: 915-834-5800/Fax: 915-542-1546

MONICA F. RAMIREZ
TX Bar No.: 24068621
Email: monica.ramirez@oag.texas.gov
JASON MCKENNEY
TX Bar No.: 24070245
Email: jason.mckenney@oag.texas.gov
Assistant Attorneys General
Consumer Protection Division
Office of the Attorney General
12221 Merit Drive, Suite 650
Dallas, TX 75251
Tele: 214-969-7639/Fax: 214-969-7615

**ATTORNEYS FOR PLAINTIFF**
**THE STATE OF TEXAS**

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on June 28, 2024, a true and correct copy of the foregoing of this document was served using the Court's electronic filing system to the following:

Quentin Tate Williams
Attorney-in-Charge
Philip Harlan Hilder
James Gregory Rytting
Stephanie K. McGuire
Hilder & Associates, P.C.
819 Lovett Blvd.
Houston, TX 77006
Tel.: (713) 655-9111
Fax: (713) 655-9112
Email: tate@hilderlaw.com
      philip@hilderlaw.com
      james@hilderlaw.com
      stephanie@hilderlaw.com

Judd E. Stone II
Christopher D. Hilton
Ari Cuenin
Alexander M. Dvorscak
Michael R. Abrams
Stone Hilton PLLC
1115 W. Slaughter Ln.
Austin, TX 78748
Tel.: (737) 465-3897
Email: judd@stonehilton.com
      chris@stonehilton.com
      ari@stonehilton.com
      alex@stonehilton.com
      michael@stonehilton.com

Jason Derot Ray
Riggs & Ray, P.C.
3307 Northland Dr., Suite 215
Austin, TX 78731
Tel.: (512) 457-9806
Fax: (512) 457-9066
Email: jray@r-alaw.com

*s/ Richard Berlin*
RICHARD BERLIN