United States District Court
Southern District of Texas
**ENTERED**
October 11, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| State of Texas | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-24-0941 |
| | § | |
| | § | |
| Colony Ridge, Inc., et al. | § | |
| *Defendants.* | § | |

### MEMORANDUM AND RECOMMENDATION

This is a consumer protection case brought by the State of Texas against a land development company and its affiliates. The case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 52. Pending before the court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 46. Defendants move to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The court recommends that Defendant's motion be **DENIED**.

### *1. Background*

The State of Texas sued Colony Ridge, Inc. and several of its affiliates as well as John Harris, an individual officer of Colony Ridge, Inc. (collectively, Colony Ridge) for violations of several consumer protection laws. Colony Ridge is a land developer that sells lots for purchasers to build a home or for commercial use. Pl.'s First Am. Compl. ¶ 30, ECF No. 27. The Colony Ridge development includes more than 33,000 acres in Liberty County, Texas and is home to approximately 50,000 people. *Id.* ¶ 31. In a detailed, seventy-page Amended Complaint, the State alleges that Colony Ridge engages in a large-scale scheme of fraudulent and deceptive

practices. *Id.* ¶¶ 1–11. This includes targeting consumers who speak Spanish with fake property listings, misrepresenting material facts about properties, and conducting the sales process in Spanish but providing final agreements in English without proper translations. *Id.*

The State sued Colony Ridge for violating (1) the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code §§ 17.41–17.63; (2) the statutory ban on fraud in real estate, Tex. Bus. & Com. Code § 27.01; (3) the Consumer Financial Protection Act (CPFA), 12 U.S.C. §§ 5552(a), 5536; and (4) the Interstate Land Sales Full Disclosure Act (ILSA), 15 U.S.C. §§ 1701-1720.

The State alleges that Colony Ridge profits by running a "foreclosure mill" that targets the Hispanic community or consumers who speak Spanish and "promises [] cheap, ready to build land and financing without proof of income." Pl.'s First Am. Compl. ¶ 1, ECF No. 27. Colony Ridge then misrepresents the conditions of the property and terms of the sale and provides the paperwork only in English. *Id.* ¶¶ 1, 3. After the sale, Colony Ridge often prevents buyers from accessing or meaningfully using the land. *Id.* ¶ 1. Consumers default on their loans at a high rate, and Colony Ridge then re-possesses the land and sells it again using the same fraudulent scheme on a new buyer. *Id.* Colony Ridge's foreclosure rate is 12%, which is about fifty times greater than the 2023 nationwide foreclosure rate. *Id.* ¶ 2.

One part of the deceptive scheme that the State alleges is a social media ploy wherein Colony Ridge creates fake social media accounts and posts fake lots for sale with photos of other properties found on Google. Pl.'s First Am. Compl. ¶ 4, ECF No. 27. Former Colony Ridge employees state that their job was to create fake individual accounts on social media and pose as legitimate individual sellers of land. *Id.* ¶ 48. Colony Ridge provides its employees with multiple SIM cards to allow the employees to

create multiple profiles purporting to be maintained by different individuals. *Id.* ¶ 48. Colony Ridge shows employees how to find photos of land from the internet and instructs its employees to list the properties in areas like Alvin or downtown Houston to cast a wider net than Colony Ridge's actual location in New Caney. *Id.* ¶¶ 48–50. Colony Ridge prohibits its employees from including real photos of its lots, allows posts only in Spanish, and does not allow employees to disclose that Colony Ridge is the actual seller of the land. *Id.* ¶¶ 52–53. The State provided a specific example of this practice in a screenshot included in its complaint. *Id.* ¶ 50. The messages appear to list a property for sale in Alvin for $1,500—all in Spanish. *Id.* (including a screenshot of messages with a photo of a property saying "Titule: Hermosa propiedad se vende[;] Area: Alvin[;] Precio : $1,500" followed by the message "quedo pendiente a los post"). The State alleges that Colony Ridge collects the contact information of those who inquire about the fake listings and targets them for sale of real Colony Ridge lots. *Id.* ¶ 47.

The State further alleges that Colony Ridge misrepresents the condition of the land to induce purchases. Pl.'s First Am. Compl. ¶¶ 55–72, ECF No. 27. The State says that Colony Ridge advertises its development on more than seventy websites and eighty social media pages, primarily in Spanish. *Id.* ¶ 55. The advertisements include claims that lots are "move in ready" and that "[t]he Land Comes with Services . . . [and] . . . [C]ity public services include sewer and water that helps you save between twenty and twenty-five thousand dollars over a septic system." *Id.* ¶ 56. But those representations are not true. City services are not readily available, and many purchasers wait more than a year for city services to be installed. *Id.*

The State provided specific facts about ten "Example Transactions" from real consumers who were misled and purchased lots from Colony Ridge. Pl.'s First Am. Compl.

¶¶ 114–88, ECF No. 27. In each, the State provided the initials of the purchaser,[1] the information the purchaser received about the lot, where or how the information was provided to the purchaser, the date of purchase, and how the purchaser was misled. *See id.*

For instance, in Example Transaction No. 1, the State claims that "salespersons Jose L. and Lucia M., told M.B.[, the purchaser,] that city services/utilities were included with the lot . . . and that she would need to wait approximately three months before being able to place a mobile home and/or build a home on the lot." Pl.'s First Am. Compl. ¶ 117, ECF No. 27. After closing, M.B. learned that the lot did not include any city services or utilities and had to pay $20,000 to install water, sewage, and electricity connections. *Id.* ¶¶ 118–19. M.B. also had to wait eight months—not three—after closing before she could place a mobile home or begin building a home on her lot. *Id.* ¶ 120.

The State alleges that such misrepresentations occurred on many occasions. Indeed, another consumer, in Example Transaction No. 10, was "informed [by Colony Ridge salespersons] that the utilities were included with the lot," but after the purchase, they "discovered that they would need to pay over $5,000 to install a transformer and a water meter to be able to access basic utilities." Pl.'s First Am. Compl. ¶¶ 180–82, ECF No. 27.

In addition to representations about city services, the State alleges that Colony Ridge misrepresents or never discloses flooding on the lots. Pl.'s First Am. Compl. ¶¶ 95–101, ECF No. 27. The properties are subject to repeated flooding, but purchasers buy the lots with no knowledge of that fact. *Id.* ¶¶ 95, 100. The purchaser

---

[1] The State explains that it used consumers' initials to protect their privacy, but the State provided Defendants with the specific names of each identified consumer. Pl.'s First Am. Compl., ¶ 63 n.11, ECF No. 27; Pl.'s Resp. Opp'n to Defs.' Mot. to Dismiss [hereinafter Pl.'s Resp.] 13 n.10, ECF No. 48.

4

in Example Transaction No. 8 was told that "there was no flooding in the subdivision," but, after closing, the purchaser "found that the lot routinely floods. In fact, the flooding occurs with little rain and often causes more than half the lot to be under water." *Id.* ¶ 174.

The State also alleges that Colony Ridge systematically misleads consumers about the nature and function of property owners' associations (POAs). Pl.'s First Am. Compl. ¶¶ 102–13, ECF No. 27. As part of their purchase, lot owners agree to become members of a POA, to pay annual dues, and to be bound by the POA's rules. *Id.* ¶¶ 8, 34, 102. The POA, in return, agrees to protect common areas, conduct use assessments to benefit current members, and give opportunities for lot owner representation in the POA. *Id.* ¶¶ 110–11. But Colony Ridge dissolved five neighborhood-specific POAs and combined them into one large POA—El Norte POA. *Id.* ¶ 104. As part of that process, community real property that was held by each smaller POA was transferred to El Norte and then conveyed to third parties for little or no consideration. *Id.* ¶ 106. Colony Ridge then allegedly continued to represent that the dissolved POAs still existed by keeping them on property websites. *Id.* ¶ 108. The State alleges that El Norte does not own any common property nor allow for meaningful owner representation or participation in the POA. *Id.* ¶ 112.

In addition to Colony Ridge's representations about the lots and POAs, the State also alleges that Colony Ridge uses unfair or deceptive documents at closing. Pl.'s First Am. Compl. ¶ 73–94, ECF No. 27. Colony Ridge tells consumers that it will take back a property if the buyer can no longer afford its monthly payments. *Id.* ¶ 86. It then gives consumers a phone number to call when "[r]eturning a property." *Id.* But, according to the State, Colony Ridge does not accept lot returns. *Id.* The State provided a specific example of this practice in Example Transaction No. 4, in which a

consumer was told that "if she could not make payments on her loan, Colony Ridge Defendants would assist her and help her transfer the lot to someone else and that her credit score would not be affected." *Id.* ¶ 141.

The State also alleges that Colony Ridge's Land Purchase Agreements, which are in English, include several misleading or false representations. Pl.'s First Am. Compl. ¶¶ 88–93, ECF No. 27. The agreements state that "possession of the property will be delivered to the Buyer as of the date of closing." Pl.'s First Am. Compl. ¶ 90. But, as discussed above, purchasers often have to wait many months or over a year to access their land. The agreements also state, "Buyer acknowledges and stipulates that Buyer is not relying on any representation, statement, or other assertion with respect to the Property condition." *Id.* ¶ 91. Finally, the agreements falsely state that property taxes "will be prorated as of the date of closing[.]" *Id.* ¶ 93. But "thousands, if not virtually all, Colony Ridge consumer deeds provide the opposite." *Id.* Deeds require purchasers to pay all taxes for the current year. *Id.*

Because the sales and pre-closing documents are all in English and because Colony Ridge targets purchasers who speak only Spanish, Colony Ridge provides purchasers with an oral summary of the documents. Pl.'s First Am. Compl. ¶ 79, ECF No. 27. But key terms of the documents are often omitted or misrepresented. *Id.* Colony Ridge also does not at any time provide purchasers with a Property Report, which is required under ILSA. *Id.* ¶ 85; 15 U.S.C. §§ 1703, 1707. The State provided two specific examples of purchasers who did not receive adequate translations of their financing and closing documents in Example Transaction Nos. 4 and 8. Pl.'s First Am. Compl. ¶¶ 136–37, 169–74. Neither purchaser could speak or read English, but Colony Ridge did not explain each page of the English documents, rushed the purchaser

through the signing process, and only explained where the purchaser had to sign. *Id.* ¶¶ 137, 173.

### 2. *Subject Matter Jurisdiction*

A court may dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Settlement Funding, L.L.C.*, 851 F.3d at 534 (quoting *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 935 (5th Cir. 2012)) ("A lack of subject matter jurisdiction may be raised at any time and may be examined for the first time on appeal."). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction has the burden to prove the court's subject matter jurisdiction. *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014).

Federal question jurisdiction requires that the civil action "aris[e] under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. The court will apply the "well-pleaded complaint" rule in evaluating jurisdiction. That is, "[a] federal question exists only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008) (citation and internal quotation marks omitted).

"In federal question cases . . . 'where the complaint . . . is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions . . . must entertain the suit.'" *Southpark Square Ltd v.*

*City of Jackson*, 565 F.2d 338, 341 (5th Cir. 1977) (quoting *Bell v. Hood*, 327 U.S. 678, 681–82 (1946)). The two exceptions are where the federal question "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* (quoting *Bell*, 327 U.S. at 681–82). But the "jurisdictional issue here is entirely separate from the question[] whether the complaint states a claim on which relief can be granted." *Id.* at 343 n.7.

The State brings claims under federal law—the CFPA and ILSA. Pl.'s Am. Compl., ECF No. 27 at 1; *see also* 12 U.S.C. §§ 5552(a), 5536; *see also* 15 U.S.C. §§ 1701-1720. The State is authorized to bring claims alleging violations of ILSA through its enforcement authority under the CFPA. See 12 U.S.C. §§ 5481(12)(R), 5481(14), 5552(a)(1).

Colony Ridge argues that the court does not have jurisdiction over claims arising under the CFPA because the federal agency charged with enforcing the CFPA—the Consumer Financial Protection Bureau (CFPB)—is unconstitutionally funded. Defs.' Mot. to Dismiss Pl.'s Am. Compl. 4–5, ECF No. 46. According to Colony Ridge, providing the CFPB with a pre-filing notice of intent to sue is a prerequisite to suit, and, absent funding, the CFPB lacks the power to receive pre-suit notice. *Id.* at 6. Thus, Colony Ridge argues that the pre-conditions to suit have not been met and this court lacks jurisdiction. *Id.* at 4–6. The court disagrees.

Colony Ridge relies on *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416 (2024). In that case, prior to reaching the Supreme Court, the Fifth Circuit held that the CFPB was impermissibly insulated from Congressional appropriations power, and thus, the CFPB's funding mechanism was unconstitutional. *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 638–39 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978, (2023) *and cert. denied*, 143 S. Ct. 981,

(2023) *and rev'd and remanded,* 601 U.S. 416, (2024) *reinstated in part by* 104 F.4th 930 (5th Cir. 2024).

The Supreme Court reversed and held that "appropriations need only identify a source of public funds and authorize the expenditure of those funds for designated purposes to satisfy the Appropriations Clause." *Consumer Fin. Prot. Bureau,* 601 U.S. 426. Thus, the Supreme Court found that, because the CFPB can draw funds from the combined earnings of the Federal Reserve System to pay for expenses in carrying out its duties, the CFPB's funding mechanism satisfies the Appropriations Clause. *Id.* at 435, 441. Importantly, in the dissent, Justice Alito noted that the real-world consequences of the decision meant that the agency could act without specific Congressional control. *Id.* at 470 (Alito, J., dissenting). Justice Alito provided several examples of CFPB action taken in early 2024. *Id.*

Relying on a Federal Reserve Press Release, Colony Ridge argues that while Congress *could* have funded the CFPB with funds from Federal Reserve earnings (or surpluses), it has not done so because there have not been any surplus funds in the Federal Reserve since 2022. MTD at 5–6.

Colony Ridge does not explain how funding for, or the budget of, an agency is tied to its lawful ability to act. Congress established the agency and authorized it to implement and enforce Federal consumer financial law. *See* 12 U.S.C. § 5511. Further, the Supreme Court found that the CFPB is constitutionally funded— and it did so during a time when Colony Ridge argues the CFPB was not funded. *Consumer Fin. Prot. Bureau,* 601 U.S. 441 (deciding the case May 16, 2024).

Also, Colony Ridge does not address the fact that the pre-suit notice requirement does not require the CFPB to take any action. The notice provision states that "[b]efore initiating any action in a court . . . a State attorney general or State regulator shall timely

provide a copy of the complete complaint to be filed and written notice describing such action or proceeding to the Bureau and the prudential regulator, if any, or the designee thereof." 12 U.S.C. § 5552(b)(1)(A). The CFPB then *may*, at its discretion, intervene in the action as a party. *Id.* § 5552(b)(2). Because no action is required on the part of the CFPB, it is not clear how any alleged lack of agency funding would deprive this court of jurisdiction to entertain this otherwise statutorily authorized lawsuit.

Relatedly, the CFPB is currently pursuing its own action against Colony Ridge. *See* CFPB's Compl., 4:23-cv-04729, ECF No. 1. Colony Ridge argues that the CFPA does not allow the State and CFPB to maintain parallel litigation. Defs.' Mot. to Dismiss Pl.'s Am Compl. 7–9, ECF No. 46. Colony Ridge states that the pre-suit notice provision and the intervention provision of the CFPA, when read together, foreclose parallel actions. *Id.* at 7; *cf.* 12 U.S.C. § 5552(b)(1), (b)(2).

The two parts of the statute that Colony Ridge relies on do not prevent parallel litigation. As discussed above, the notice provision states that a State shall provide the CFPB with a copy of the complaint and written notice describing such action to identify "whether there may be a need to coordinate the prosecution of the proceeding so as not to interfere with any action, including any rulemaking, undertaken by the [CFPB.]" 12 U.S.C. § 5552(b)(1)(A), (C)(iii). The intervention provision states that, after receiving notice of a suit, the CFPB:

> may—
> (A) intervene in the action as a party;
> (B) upon intervening—
>> (i) remove the action to the appropriate United States district court, if the action was not originally brought there; and
>> (ii) be heard on all matters arising in the action; and

(C) appeal any order or judgment, to the same extent
as any other party in the proceeding may.

*Id.* § 5552(b)(2). Nothing in these provisions prohibits parallel
suits. To the extent that one suit proceeds prior to the other, that
does not prevent the other suit. It is routine that separate suits
involve similar facts. The fact that later procedural developments
may alter the pace or direction of this case does not bar it from
being brought in the first instance.

Also, although each suit alleges causes of action under the
CFPA and ILSA, they each also allege different causes of action.
*Compare* CFPB's Compl. 1, 4:23-cv-04729, ECF No. 1 (alleging
violations of the Equal Credit Opportunity Act, the Fair Housing
Act, the CFPA, and ILSA) *with* State of Texas's First Am. Compl.
1, ECF No. 27 (alleging violations of the DTPA, Texas statutory
ban on fraud in real estate, the CFPA, and ILSA). Accordingly, the
court has subject matter jurisdiction over this suit.[2]

### 3. *Legal Standards*

#### A. *Rule 12(b)(6)*

Rule 12(b)(6) authorizes the court to dismiss a complaint for
"failure to state a claim upon which relief can be granted." Fed. R.
Civ. P. 12(b)(6). Generally, the court is constrained to the "four
corners of the complaint" to determine whether the plaintiff has
stated a claim. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir.
2011); *see also Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698, 708
(S.D. Tex. 2002) ("[T]he court may not look beyond the four corners
of the plaintiff's pleadings.").

"The court accepts all well-pleaded facts as true, viewing
them in the light most favorable to the plaintiff," and "drawing all

---

[2] Because the court has federal question jurisdiction over the State's federal
claims, it also has supplemental jurisdiction over the remaining state-law
claims. *See* 28 U.S.C. §§ 1331, 1367.

reasonable inferences in that party's favor." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). The pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014); *see Skinner v. Switzer,* 562 U.S. 521, 530 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory.").

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

Conclusory allegations "disentitle[] them to the presumption of truth." *Iqbal*, 566 U.S. at 681. It follows that the court, in reviewing the plaintiff's complaint, may neither "accept conclusory allegations" nor "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

### B. Rule 9(b)

Special pleading rules apply to claims of fraud. Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.*; *see Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."). Because Rule 9(b) "does not expressly authorize a motion for its enforcement, a challenge to a pleading based on insufficient particularization of the circumstances of an alleged fraud typically is asserted within a motion to dismiss (Federal Rule of Civil Procedure 12(b)(6)) or a motion to strike (Rule 12(f))." 5A C. Wright & A. Miller, Federal Practice and Procedure § 1300 (4th ed.).

Generally, courts have required the pleading to lay out "the who, what, when, where, and how" of the alleged fraud to comply with Rule 9(b). *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003). Rule 9(b)'s application is context-specific, however, and "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). Where the facts are particularly within the perpetrator's knowledge, the pleading requirements are held to a lower standard. *See United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003).

### 4. Analysis

The State alleges violations of: (1) the DTPA; (2) the statutory ban on fraud in real estate; (3) the CPFA; and (4) ILSA.

### A. Texas Deceptive Trade Practices Act

The State alleges that Colony Ridge has engaged in false, misleading, and deceptive acts and practices that violate six specific provisions of the DTPA.[3] Pl.'s First Am. Compl. ¶¶ 191–205, ECF No. 27. The State alleges that Colony Ridge violated the following provisions of the DTPA:

(1) Engaging in "[f]alse, misleading, or deceptive acts or practices," Tex. Bus. & Com. Code § 17.46(a);

(2) "passing off goods or services as those of another," *id.* § 17.46(b)(1);

(3) "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," *id.* § 17.46(b)(2);

(4) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have," *id.* § 17.46(b)(5);

(5) "advertising goods or services with intent not to sell them as advertised," *id.* § 17.46(b)(9); and

(6) "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law," *id.* § 17.46(b)(12).

Colony Ridge argues that suits alleging violations of provisions 2, 3, 4, and 5 above (§ 17.46(b)(1), (2), (5), and (9)) require "consumer status" and "appl[y] only where the allegedly unlawful conduct relates to '*acquired* goods or services.'" Defs.'

---

[3] The parties dispute whether the heightened Rule 9(b) or general Rule 8 pleading standard applies to the DTPA claims. The court need not address this issue because, regardless of which standard applies, the State has alleged sufficient facts throughout its 70-page amended complaint including the "who, what, when, where, and how" of its allegations to survive even the heightened 9(b) pleading standard.

Mot. to Dismiss Pl.'s Am Compl. 11, ECF No. 46 (citing *Tweedell v. Hochheim Prairie Farm Mut. Ins. Ass'n*, 1 S.W.3d 304, 308 (Tex. App.—Corpus Christi 1999, no pet.)). According to Colony Ridge, these claims fail because the State does not have consumer status. *Id.*

The State argues that the presence of a consumer, or an injury to a consumer, is not required when the State initiates a DTPA lawsuit. The court agrees.

The statute plainly separates causes of action brought by consumers from those brought by the State. *Compare* Tex. Bus. & Com. Code § 17.50 ("Relief for Consumers. . . A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish. . .") *with id.* § 17.47 ("Restraining Orders . . . Whenever the consumer protection division has reason to believe that any person is engaging in . . . any act or practice declared to be unlawful by this subchapter, . . . the division may bring an action in the name of the state. . .); *see also Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980) ("The Act thus differentiates between the remedies available to correct violations of the Act."). It is true that for private causes of action under the DTPA, "the claimant must be a consumer," *Tweedell v. Hochheim Prairie Farm Mut. Ins. Ass'n*, 1 S.W.3d 304, 307 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.); *see also Riverside*, 603 S.W.2d at 173, but that is not so when the State brings an action. The DTPA says:

> Whenever the consumer protection division has reason to believe that any person is engaging in, has engaged in, *or is about to engage in* any act or practice declared to be unlawful by this subchapter, and that proceedings would be in the public interest, the division may bring an action in the name of the state against the person to restrain by temporary

> restraining order, temporary injunction, or permanent
> injunction the use of such method, act, or practice.

Tex. Bus. & Com. Code § 17.47 (emphasis added). The State need not allege any injury to make its claim under the DTPA. *Holzman v. State*, No. 13-11-00168-CV, 2013 WL 398935, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 31, 2013, pet. denied). Anyone engaging in "deceptive practices may be subjected to a suit by the Consumer Protection Division of the Attorney General's Office, under section 17.47." *Riverside*, 603 S.W.2d at 173.

Accordingly, to the extent that Colony Ridge argues that the State's DTPA claims should be dismissed because the State lacks consumer status or because there is no injury, the motion to dismiss should be denied. The court addresses the remaining arguments below.

### i.   *Tex. Bus. & Com. Code § 17.46(b)(1)*

The DTPA states that it is unlawful to pass off goods or services as those of another. Tex. Bus. & Com. Code § 17.46(b)(1). Colony Ridge argues that the State has not alleged facts showing that it "passed off goods" as "those of another." Defs.' Mot. to Dismiss Pl.'s Am. Compl. 12, ECF No. 46.

The State alleges that Colony Ridge instructs marketing employees to create many individual social media accounts—using multiple SIM cards, fake names, and fake photos—to list properties for sale that do not exist. Pl.'s First Am. Compl. ¶¶ 48–49, ECF No. 27. The State also alleges that those listings use photos from Google searches, not photos of properties that Colony Ridge owned, and that employees were instructed specifically to not mention Colony Ridge. *Id.* ¶¶ 49–51, 53. The State provided a specific example of this practice in a screenshot included in its complaint. *Id.* ¶¶ 50.

Colony Ridge argues that it did not pass off *its own* lots as belonging to anyone else and that "[i]f the posts and listings were

for fictitious properties, then no goods were passed off as those of another in any transaction, let alone acquired by a consumer." Defs.' Mot. to Dismiss Pl.'s Am. Compl. 12, ECF No. 46.

The court finds this argument unpersuasive. The State has alleged that Colony Ridge listed properties for sale by others by using fake photos and fake social media accounts. The State cited specific employees who were instructed to engage in this behavior and an example of a post. In other words, the State alleges that Colony Ridge marketed random properties as those of a fictitious person. This is certainly sufficient to survive Colony Ridge's motion to dismiss.

### ii.    *Tex. Bus. & Com. Code § 17.46(b)(2)*

The DTPA states that it is unlawful to cause "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." Tex. Bus. & Com. Code § 17.46(b)(2). The State alleges that Colony Ridge caused such confusion (1) with its fake property listings and (2) by representing to customers that properties were subject to Property Owner Associations that had been terminated. Pl.'s First Am. Compl. ¶ 202, ECF No. 27.

Colony Ridge argues that the State has not alleged any confusion regarding the *source, sponsorship, approval, or certification* of goods.[4] Defs.' Mot. to Dismiss Pl.'s Am. Compl. 12–13, ECF No. 46. "Subsection (b)(2) deals with deception in the origin, source, or endorsement of goods and services." *Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001).

As discussed above, the State has provided specific examples wherein Colony Ridge misrepresented the source of real estate by

---

[4] Colony Ridge's argument that there were no consumers of any false listings is addressed above. The State does not need to allege consumer status in its suit.

listing fake lots for sale by fake individuals. The State also alleges that Colony Ridge dissolved five neighborhood-specific POAs and combined them into one large POA—El Norte POA. Pl.'s First Am. Compl. ¶ 104, ECF No. 27. As part of that process, community real property that was held by each smaller POA was transferred to El Norte and then conveyed to third parties for little or no consideration. *Id.* ¶ 106. Colony Ridge then allegedly continued to represent that the dissolved POAs still existed by keeping them on property websites. *Id.* ¶ 108. If true, these allegations show that Colony Ridge caused confusion about the source of POA services and restrictions that a buyer would be subject to upon purchasing a lot. As such, the State has alleged sufficient facts to make out a claim under the DTPA § 17.46(b)(2).

### iii.    *Tex. Bus. & Com. Code § 17.46(b)(5)*

The DTPA provides that it is unlawful to "represent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not[.]" Tex. Bus. & Com. Code § 17.46(b)(2). The State alleged that Colony Ridge violated this provision in nine ways.

Colony Ridge does not take issue with all of the State's nine theories under § 17.46(b)(5). The allegations that Colony Ridge argues fail to state a claim include: (1) the identity of the property owner/financer of fake listings, (2) the lot return policy, (3) proration of property taxes, and (4) identity of POAs.

The State alleged sufficient facts to make out a claim under each of these theories. If the State's allegations are true, Colony Ridge made the following misrepresentations:

(1) Colony Ridge misrepresented the ownership of the fake properties for sale through a scheme of fake property listings.

(2) Colony Ridge misrepresented that it accepted property returns. Colony Ridge told buyers at closing that the buyer could return the lot if necessary and gave the buyer a phone number to call in that situation. But Colony ridge does not accept returns.

(3) Colony Ridge misrepresented in its sale that ·first-year property taxes would be prorated. Its Land Purchase Agreements state that property taxes "will be prorated as of the date of closing[.]" Pl.'s First Am. Compl. ¶ 93, ECF No. 27. But "thousands, if not virtually all, Colony Ridge consumer deeds provide the opposite." *Id.* It is true that mere breach of contract alone is not enough to support a claim under the DTPA, but this claim is part of a larger set of facts alleging that a sophisticated company has taken advantage of a vulnerable community. *See Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14 (Tex. 1996); *see also Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 304 (Tex. 2006) ("A contractual promise made with no intention of performing may give rise to an action for fraudulent inducement."). Because Colony Ridge's deeds provided that purchasers were responsible for all taxes in the year of purchase, Colony Ridge knew at the time of entering the Land Purchase Agreement that it would not comply with that term of the Agreement. That is enough to survive Colony Ridge's motion to dismiss.

(4) Colony Ridge misrepresented POA services that lots would receive (including common property, an owner's ability to participate in the POA, and which POA would govern).

The State has alleged the specifics of each of these violations in detail. All of the State's theories of unlawful activity survive Colony Ridge's motion to dismiss.

### iv.   *Tex. Bus. & Com. Code § 17.46(b)(9)*

The DTPA states that it is unlawful to "advertis[e] goods or services with intent not to sell them as advertised." Tex. Bus. & Com. Code § 17.46(b)(2).

The State alleged that Colony Ridge violated this provision by falsely representing that lots were move-in ready, misrepresenting fees associated with installation of city services, misrepresenting the date lots would be ready, advertising properties for sale that did not exist, and falsely advertising POAs that did not exist. Pl.'s First Am. Compl. ¶ 204, ECF No. 27. Colony Ridge argues that two of these theories fail because the State has not alleged intent. *See Chastain v. Koonce,* 700 S.W.2d 579, 583 (Tex. 1985) (explaining that some of the "laundry list" provisions in § 17.46(b) include a scienter requirement while others are objective).

The State argues that it has pled "overwhelming facts" describing Colony Ridge's plans to create a "systematic, intentional ruse." Pl.'s Resp. 20–21, ECF No. 48. Indeed, the State has alleged that Colony Ridge *directed* employees to use fake names and photos to list land for sale and implemented a plan to diminish POA services while continuing to advertise POAs that were dissolved up through at least May 2024. Pl.'s First Am. Compl. ¶¶ 50–52, 108, ECF No. 27. The State's claims under the DTPA § 17.46(b)(9) survive Colony Ridge's motion to dismiss.

### v.   *Tex. Bus. & Com. Code § 17.46(b)(12)*

The DTPA states that it is unlawful to "represent[] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law[.]" Tex. Bus. & Com. Code § 17.46(b)(12).

First, Colony Ridge argues that the State has failed to allege more than a mere breach of contract regarding contract terms providing for property conveyance at closing and prorating taxes for one year. Defs.' Mot. to Dismiss Pl.'s Am. Compl. 15–16, ECF No. 46.

The State argues that Colony Ridge has "a pattern of preventing access or forbidding development on land after closing."

Pl.'s Resp. 21, ECF No. 48. Also, the State argues that sales documents falsely "state that property taxes will be prorated," but the deeds say otherwise. Pl.'s First Am. Compl. ¶ 93, ECF No. 27. Colony Ridge, the State argues, promises one thing but has a policy of doing something different, which is a DTPA violation. The court agrees. *See Marek v. Lehrer*, No. 03-17-00509-CV, 2018 WL 6217566, at *9 (Tex. App.—Austin Nov. 29, 2018, no pet.) (DTPA claims exist where the Defendant did not intend to perform on a contract when the contract was formed).

Second, Colony Ridge argues that a waiver contained within its sales contracts does not violate the DTPA. The DTPA provides that "[a]ny waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void[.]" § 17.42(a). The provision in the sales contract states that "Buyer acknowledges and stipulates that Buyer is not relying on any representation, statement, or other assertion with respect to the Property condition." Pl.'s First Am. Compl. ¶ 91, ECF No. 27. Colony Ridge argues that the provision is an ordinary merger clause, and even if it does waive a DTPA provision, it is merely void under the DTPA. It would not be a per se violation of the DTPA.

The State's Complaint argues that "[w]hen Colony Ridge provides contracts containing this unlawful waiver to a consumer, Colony Ridge misrepresents that under the contract, consumers' rights under the DTPA are waived, rights which cannot be waived." Pl.'s First Am. Compl. ¶ 91, ECF No. 27. The State does not cite any supporting authority for its assertion other than the DTPA itself. In its response, the State notes in a footnote that the contracts include a deceptive waiver provision that violates the DTPA. Pl.'s Resp. 21 n.16, ECF No. 48.

The DTPA invalidates these merger clauses. Arguably, since the DTPA also states that it is unlawful to represent that an

agreement involves rights which it does not involve, or which are prohibited by law, these merger clauses could also be a violation of § 17.46(b)(12). While, as to this one claim, it may be a close call, the court concludes at this junction and on the basis of the sparse briefing in the record that the State has met the pleading requirements. The court will allow discovery and will reconsider the issue in the context of a motion for summary judgment. As such, this theory of DTPA violation survives Colony Ridge's motion to dismiss.

Third, Colony Ridge argues that the State failed to allege with the required specificity what rights, remedies, or obligations Colony Ridge misrepresented about its POAs. The State alleged that buyers agreed to become members of a POA, pay fees, and be bound by the POA's rules and, in exchange, Colony Ridge or the appropriate POA would protect common areas, use assessments to benefit members, and provide opportunities for POA member representation. Pl.'s First Am. Compl. ¶¶ 8, 26-29, 34, 110–11, ECF No. 27. But these representations were false. For example, there was no common property and Colony Ridge restricted buyer's ability to participate in the POA. *See id.* ¶¶ 102-13.

Again, the State has provided significant detail in its allegations and meets its burden to state a claim. For the reasons stated above, the State's DTPA claims survive Colony Ridge's motion to dismiss.

### *B. Fraud in Real Estate Transactions*

The State claims that Colony Ridge violated the statutory ban on fraud in real estate, Tex. Bus. & Com. Code § 27.01. Pl.'s First Am. Compl. ¶¶ 207–17, ECF No. 27. The statute states that:

(a) Fraud in a transaction involving real estate . . . consists of a

    (1)  false representation of a past or existing material fact, when the false representation is

      (A)  made to a person for the purpose of inducing that person to enter into a contract; and

      (B)  relied on by that person in entering into that contract; or

  (2)  false promise to do an act, when the false promise is

      (A)  material;

      (B)  made with the intention of not fulfilling it;

      (C)  made to a person for the purpose of inducing that person to enter into a contract; and

      (D)  relied on by that person in entering into that contract.

Tex. Bus. & Com. Code § 27.01.

In a transaction involving the transfer of title of real estate, a violation of the provision above is also a false, misleading, or deceptive practice under the DTPA § 17.46(b). Tex. Bus. & Com. Code § 27.015. The parties appear to agree that the heightened Rule 9(b) standard applies to claims of fraud in real estate under § 27.01.

Colony Ridge argues that the State failed to state a claim under the fraud in real estate provision because the statute does not include loan transactions. Defs.' Mot. to Dismiss Pl.'s Am. Compl. 18–19, ECF No. 46; *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343 (5th Cir. 2008) (stating that loan transactions do not come under the statute, even if secured by land) (quoting *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied). The State argues that it has alleged fraud in the *sale* of real estate, not loan transactions, because Colony Ridge represented to some consumers that "city services were available at lots as a means of inducing consumers to purchase a lot." Pl.'s Resp. 23, ECF No. 48; Pl.'s First Am. Compl. ¶¶ 210–11, ECF No. 27. The court agrees that the state has alleged facts relating to the sale of real estate.

Colony Ridge also argues that the State did not satisfy Rule 9(b) or establish intent. Defs.' Mot. to Dismiss Pl.'s Am. Compl. 19–20, ECF No. 46. The court disagrees. The State provided ten examples of specific consumers and their transactions with Colony Ridge. Pl.'s First Am. Compl. ¶¶ 116–88, ECF No. 27. The State showed that at least one of those consumers was "informed [by Colony Ridge salespersons] that the utilities were included with the lot," and that after the purchase, they "discovered that they would need to pay over $5,000 to install a transformer and a water meter to be able to access basic utilities." *Id.* ¶¶ 180–82. The State provides three more examples, Example Transaction Nos. 1, 2, and 3, with similarly situated individuals who received incorrect material information about their lots. *Id.* ¶¶ 116–35. Each example states the consumer who was misled, what statements mislead them, when the purchase occurred, and where the misrepresentations occurred. These allegations show how the alleged fraud occurred. The State has thoroughly alleged its claim and met its burden under Rule 9(b).

Colony Ridge next argues that the State has not alleged justifiable reliance, which is required to state a claim under Section 27.01. Defs.' Mot. to Dismiss Pl.'s Am. Compl. 20, ECF No. 46. The claim's materiality and reliance elements are "essentially identical" to the common law fraud elements. *Burleson State Bank*, 27 S.W.3d at 611. "Whether a party's actual reliance is also justifiable is ordinarily a fact question, but the element may be negated as a matter of law when circumstances exist under which reliance cannot be justified." *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 558 (Tex. 2019).

Courts have held that a party survives a motion to dismiss for failure to allege justifiable reliance in circumstances less favorable than those here. *See Comcast Corp. v. Houston Baseball Partners LLC,* 627 S.W.3d 398, 418–19 (Tex. App.—Houston [14th

Dist.] 2021) (holding that allegations relying on justifiable reliance survived a motion to dismiss under Tex. Civ. Prac & Rem. Code § 27.003(a) where a sophisticated party with a due-diligence team relied on the other party's representations in contracting), *aff'd sub nom. McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907 (Tex. 2023).

The State does not allege general representations about city services, rather, it provides *specific purchasers* who were informed that *their lot* had services. This is not a transaction between two sophisticated parties, and whether purchasers here justifiably relied on Colony Ridge's representations cannot be decided as a matter of law at this stage. It is at least plausible that the consumers' reliance on Colony Ridge's representations was justified.

Finally, Colony Ridge argues that any damages the State may receive are limited based on the State's allegations. Defs.' Mot. to Dismiss Pl.'s Am. Compl. 22, ECF No. 46. The State argues that this can be resolved at a later stage in the suit. Pl.'s Resp. 25, ECF No. 48. The court agrees. The issue in a 12(b)(6) motion is whether the nonmoving party "fail[ed] to state a claim upon which relief can be granted[,]" not whether all the relief sought can be granted. Fed. R. Civ. P. 12(b)(6); *Mott's LLP v. Comercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 791 (W.D. Tex. 2020) ("Whether a claim for relief should be dismissed under Rule 12(b)(6) turns not on whether all of the relief asked for can be granted, but whether the plaintiff is entitled to *any* relief.").

Thus, the State has sufficiently alleged its claim that Colony Ridge violated the prohibition against fraud in real estate, Tex. Bus. & Com. Code § 27.01, and this claim survives Colony Ridge's motion to dismiss.

### C. Consumer Financial Protection Act

The CFPA states that it is unlawful for any covered person "to engage in any unfair, deceptive, or abusive act or practice[.]" 12 U.S.C. § 5536(a)(1)(B). Colony Ridge argues that the State failed to meet the pleading standards in both Rule 9(b) and Rule 8.[5] Defs.' Mot. to Dismiss Pl.'s Am. Compl. 23–24, ECF No. 46. Colony Ridge argues that the State relies on deceptive conduct to make its claim, but the State's allegations are "far too conclusory" to support relief. *Id.* at 24.

As the court has detailed above, the State provided the details of ten specific consumers who were mislead or deceived in their dealings with Colony Ridge. The State included allegations of what each consumer was told, by whom, and how those representations were false. The State provides the exact information required to show who has been affected, what representations Colony Ridge made, when the dealings occurred, where the dealings or representations occurred, and how the alleged fraud took place.

Colony Ridge also argues that the State's demand for civil penalties is barred because the CFPA provides for civil penalties after a court "entered judgment in favor of the Bureau," and the Bureau is not a party here. Defs.' Mot. to Dismiss Pl.'s Am. Compl. 25, ECF No. 46 (quoting 12 U.S.C. § 5565(c)(5)). The State responds that this argument is premature and inappropriate for a motion to dismiss. The court agrees. As discussed above, the issue in a 12(b)(6) motion is whether the nonmoving party adequately stated its claim, not whether all relief sought can be granted. The State sufficiently pleaded its claim under the CFPA.

---

[5] The parties again dispute whether the heightened Rule 9(b) pleading standard applies. The court does not address this argument because it finds that the State has alleged sufficient facts to meet the heightened 9(b) standard.

### D. Interstate Land Sales Full Disclosure Act

To the extent that Colony Ridge also argues that the State's claims under ILSA are insufficiently alleged, the court disagrees. ILSA imposes certain requirements on developers selling land, and the State alleges the Colony Ridge violated several of these requirements.

Specifically, ILSA requires that developers provide a property report to purchasers before signing a contract. 15 U.S.C. § 1703(a)(1)(B). But the State alleges that many, if not all, purchasers never received a property report. Pl.'s First Am. Compl. ¶¶ 85, 243, ECF No. 27. It is also unlawful for a developer to use a "contract, deed or other document prepared in a language other than that in which the sales campaign is conducted, unless an accurate translation is attached to the document." 12 C.F.R. § 1011.20(f). The State alleged that Colony Ridge advertised and conducted the sales process in Spanish, but the final contract was in English and not fully and accurately translated. Pl.'s First Am. Compl. ¶¶ 83, 84, ECF No. 27. The State provided specific examples of consumers supporting these claims. The State's ILSA claim survives Colony Ridge's motion to dismiss.

### 5. *Conclusion*

For the foregoing reasons, the court recommends that Defendant's Motion to Dismiss, ECF No. 46, be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on _October 11_, 2024.

_____
Peter Bray
United States Magistrate Judge