UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STATE OF TEXAS, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 4:24-CV-00941** |
| ) | |
| COLONY RIDGE, INC., et al., ) | |
| ) | |
|    Defendants. ) | |
| _____ ) | |

**<u>DEFENDANTS' OBJECTIONS TO MEMORANDUM AND RECOMMENDATION</u>**

PHILIP H. HILDER
Q. TATE WILLIAMS
STEPHANIE K. MCGUIRE
**HILDER & ASSOCIATES, P.C.**
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
MICHAEL R. ABRAMS
ALEXANDER M. DVORSCAK
CODY C. COLL
**STONE | HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
(737) 465-3897

JASON RAY
**RIGGS & RAY, P.C.**
3307 Northland Dr., Ste 215
Austin, Texas 78731
(512) 457-9806

*Attorney for Defendants Colony Ridge, Inc., Colony Ridge Development, LLC, Colony Ridge BV, LLC, Colony Ridge Land, LLC and Defendants T-Rex Management, Inc., John Harris, and Houston El Norte Property Owners' Association, Inc.*

## NATURE AND STAGE OF THE PROCEEDING

The State of Texas sued eight defendants—Colony Ridge, Inc., Colony Ridge Development, LLC, Colony Ridge BV, LLC, Colony Ridge Land, LLC, T-Rex Management, Inc., John Harris, CH&P Management, LLC, and Houston El Norte Property Owners' Association, Inc.—asserting theories under federal and state law that consumers were deceived in buying property in Colony Ridge. *See* ECF No. 27, Am. Compl. ¶ 220 (claim under the Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5536(a)(1)(B)); *id.* ¶¶ 191-217 (claims under the Deceptive Trade Practices Act, Tex. Bus. & Comm. Code §§ 17.41-.63, and prohibitions on fraud in real estate, *id.* §§ 27.01-.03). But as Defendants explained in their motion to dismiss, ECF No. 46, the Court lacks subject matter jurisdiction over the State's federal claims, and once those claims are dismissed, there is no basis for the Court to hear the State's pendant state-law claims.

The Court referred Defendants' motion to Magistrate Judge Bray, who issued a Memorandum and Recommendation concluding that Defendants' motion should be denied. *See* ECF No. 61. For the reasons below, Defendants respectfully object to the Memorandum's jurisdictional analysis and recommendations.[*] The Court lacks subject matter jurisdiction, and the State's claims should be dismissed.

## STATEMENT OF THE ISSUES

I.   Whether the Memorandum erred in finding that the State can invoke the CFPA to ground

---

[*] The Memorandum also rejected Defendants' arguments that the State failed to plead claims for relief under Federal Rule of Civil Procedure 12(b)(6). ECF No. 61 at 13-27. As the Court's analysis was cabined to the State's pleadings, Defendants do not re-urge those arguments here. *E.g., id.* at 22 (calling one of the State's theories a "close call" and stating that the Court would "reconsider the issue in the context of a motion for summary judgment."). For avoidance of doubt, Defendants preserve all rights to challenge the State's evidence and legal theories at summary judgment or at trial, if necessary.

1

federal jurisdiction.

II.   Whether the Memorandum erred in finding that the State can proceed with its suit under the CFPA when the Consumer Financial Protection Bureau (CFPB), which is charged with enforcing the CFPA, has already asserted identical violations in a pending suit in this Division.

## ARGUMENT AND AUTHORITIES

I.   **The Memorandum erred in finding that the State can pursue its CFPA claims.**

The CFPB is the "the primary enforcer of the CFPA." *Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292, 1307 (D.N.M. 2018). As such, although Congress authorized States to "bring a civil action . . . to enforce provisions of this title," States must provide the CFPB with a pre-filing notice of intent to sue. 12 U.S.C. § 5552(a)(1), (b)(1)(A); *see also id.* § 5552(b)(1)(C) (notice must describe "the alleged facts underlying the proceeding"). The State has already acknowledged that this requirement is a prerequisite to suit. Am. Compl. ¶ 219.

Defendants' motion to dismiss challenged whether the CFPB could lawfully receive the State's notice. ECF No. 46 at 5-7. Congress funded the CFPB by authorizing it to draw on "the *combined earnings* of the Federal Reserve System." 12 U.S.C. § 5497(a)(1) (emphasis added). In *Consumer Financial Protection Bureau v. Community Financial Services Association of America* ("*CFPB v. CFSA*"), the Supreme Court reversed a Fifth Circuit decision that this funding mechanism violates the Appropriations Clause and the constitutional separation of powers. 601 U.S. 416, 425 (2024). The Court held that "the requirements of the Appropriations Clause are satisfied" because "the statute that authorizes the Bureau to draw funds from the combined earnings of the Federal Reserve System is an 'Appropriatio[n] made by Law.'" *Id.* at 435. The Court characterized this funding structure as constitutional because "surplus funds in the Federal Reserve System would otherwise be deposited into the general fund of the Treasury" and "money

otherwise destined for the general fund of the Treasury qualifies" as an appropriation. *Id.* at 425 (citing 12 U.S.C. § 289(a)(3)(B)).

The problem, however, is that the Federal Reserve has no "surplus funds" to deposit into the Treasury. *See* Press Release, Federalreserve.gov (Jan. 12, 2024), *available at* https://www.federalreserve.gov/newsevents/pressreleases/other20240112a.htm (last accessed October 25, 2024). In September 2022, the Federal Reserve's earnings became insufficient to "provid[e] for operating costs, payments of dividends, and an amount necessary to maintain surplus." *Id.* Ever since, no money has been "otherwise destined for the Treasury" that could qualify as an appropriation. *CFPB v. CFSA*, 601 U.S. at 425. The CFPB's funding is therefore unconstitutional until "remittances to the U.S. Treasury resume," Press Release, *supra*. In the meantime, any CFPB action is voidable as an "exercise of power that the actor did not lawfully possess." *See Collins v. Yellen*, 141 S. Ct. 1761, 1787-88 (2021); *see* ECF No. 46 at 5-7.

The Memorandum disagreed in three respects. *First*, it faulted Defendants for failing to explain how funding for an agency is tied to its lawful ability to act. ECF No. 61 at 9. But Defendants referenced Supreme Court authority for that very proposition. ECF No. 46 at 6 (citing *Collins*, 141 S. Ct. at 1787-88). The link between an agency's funding and its authority is well-established: After all, "a constitutionally proper appropriation is as much a precondition to every exercise of executive authority by an administrative agency as a constitutionally proper appointment or delegation of authority." *CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (en banc) (Jones, J., concurring). Congress has recognized as much by requiring agencies to cease operations when they are unfunded. *See* 31 U.S.C. § 1342; *e.g.*, *Davis & Assocs., Inc. v. District of Columbia*, 501 F. Supp. 2d 77, 81 (D.D.C. 2007) (contract void under 31 U.S.C. § 1341(a)(1)(B) when entered into before an appropriation). The Memorandum erred in

3

suggesting that an agency's lack of funding is inconsequential to its authority to act.

*Second*, the Memorandum observed that the "pre-suit notice requirement does not require the CFPB to take any action." ECF No. 61 at 9. The Memorandum continued that the CFPA provides, upon receiving notice, that the CFPA *may* in its discretion intervene as a party. 12 U.S.C. § 5552(b)(2). To be sure, the Memorandum is correct that nothing in the CFPA *compels* the CFPB to intervene in a state-led suit. Indeed, the CFPB has not intervened here. But the Memorandum is wrong to suggest that the CFPB is not required to act at all when a state brings a CFPA claim. The statute presupposes that the agency will (1) receive a state's notice and (2) evaluate it. Otherwise, the pre-suit notice requirement would serve no purpose. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (courts must avoid constructions that would render parts of a statute superfluous). Indeed, Congress required the CFPB to "prescribe regulations to implement the requirements of this section and, from time to time, provide guidance in order to further coordinate actions with the State attorneys general and other regulators." 12 U.S.C. § 5552(c). To that end, the CFPB has promulgated detailed regulations implementing the statute's notice requirement. *See* 12 C.F.R. § 1082.1. And as mentioned above, the State does not dispute that it needed to provide pre-suit notice to the CFPB before it could bring this suit. Am. Compl. ¶ 219. In the absence of lawful funding, the CFPB could not receive, evaluate and consider whether to act on the State's notice—all steps the CFPA's text and structure mandate the agency to undertake.

*Third*, and finally, the Memorandum noted that the Supreme Court issued its decision rejecting the challengers' Appropriation Clause challenge in May 2024, a time in which Defendants claim the CFPB was not lawfully funded. ECF No. 61 at 7. The timing of the Court's decision, however, does not bear on Defendants' challenge here. The Court did not have an opportunity to address the CFPB's current method of funding, or even its funding in September

4

2022, because the challenged action in that case transpired in 2017. *CFPB v. CFSA*, 601 U.S. at 423. The Court therefore could not, and did not, evaluate whether the CFPB's *current* funding complies with the Appropriations Clause. For the reasons explained above, the Court should conclude that the CFPB cannot take any lawful action, including receipt of pre-suit notices, until payments from the Federal Reserve to the Treasury resume.

**II.     The Memorandum erred in allowing this parallel suit.**

The State's suit suffers a second jurisdictional defect: it impermissibly overlaps with a pending action that the CFPB brought in this Division in December 2023. *See United States v. Colony Ridge*, No. 4:23-CV-04729, ECF No. 1 ¶ 201 (S.D. Tex. Dec. 20, 2023) (alleging violations of the CFPA, 12 U.S.C. §§ 5531, 5536). The CFPA's framework impliedly bars the follow-on exercise of the State's "secondary enforcement authority." *See Navajo Nation*, 344 F. Supp. 3d at 1307. As noted above, the CFPA's notice provision requires appraisal of the "underlying facts of the proceeding" to ensure that States and the CFPB will "coordinate the prosecution of the proceeding so as not to interfere with any action . . . undertaken by the [CFPB]." 12 U.S.C. § 5552(b)(1)(C)(ii), (iii). But providing notice to the CFPB of facts and legal theories upon which the CFPB has already sued would accomplish nothing, rendering the notice provision superfluous. And the CFPA's "coordination" requirement could likewise only serve some purpose in instances where, unlike here, a State is *unaware* of the CFPB's actions and therefore would benefit from consulting with the CFPB before filing suit (and vice versa).

Parallel litigation also contravenes the CFPA's intervention provisions. *See* 12 U.S.C. § 5552(b)(2)(A). If the CFPA were interpreted to permit duplicative litigation where the CFPB has already filed suit, the CFPA would invite, if not require, violations of the rule that a plaintiff cannot sue the same defendant twice in the same court over the same subject matter. *United States v.*

5

*Haytian Republic*, 154 U.S. 118, 123-24 (1894); *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985). Indeed, the State acknowledged that "in certain situations the CFPB's intervention power might be defective," ECF No. 48 at 10, because CFPB intervention would violate that very principle. Congress presumptively avoids enacting defective laws, and courts avoid "absurd" contrary conclusions "'if alternative interpretations consistent with legislative purpose are available.'" *Shell Offshore, Inc. v. Tesla Offshore, L.L.C.*, 905 F.3d 915, 923 (5th Cir. 2018) (citation omitted).

The Memorandum rejected Defendants' arguments on the basis that separate suits routinely involve similar facts and, in any event, the two suits allege different causes of action. ECF No. 61 at 11. But neither the Memorandum nor the State disputed that some of the counts in both suits overlap—the CFPB and the State both allege, for instance, that Defendants violated 12 U.S.C. § 5536—or that the CFPB's suit will have preclusive effect if it reaches final judgment before the State's. *See Navajo Nation*, 344 F. Supp. 3d at 1302-07. This suit would therefore waste judicial resources, heighten the risk of inconsistent decisions, and clash with Congress's demand that the CFPB enforce the CFPA "consistently." 12 U.S.C. § 5511(a). The CFPA need not be read to engender such conflict. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). Instead, the CFPA's structure impliedly precludes the State's claims because "action by the CFPB is intended to represent the interests of all consumers nationwide" and such suits therefore bar the follow-on exercise of "secondary enforcement authority" like the one the State is attempting to bring to bear here. *Navajo Nation*, 344 F. Supp. 3d at 1307-08.

## CONCLUSION AND PRAYER

Defendants respectfully request that the Court sustain their objections to the Memorandum and dismiss the State's First Amended Complaint for lack of subject matter jurisdiction.

Dated: October 25, 2024.                                  Respectfully submitted.

|  |  |
|---|---|
| Philip H. Hilder (TX 09620050) | /s/ Christopher D. Hilton |
| Q. Tate Williams (TX 24013760) | Judd E. Stone II (TX 24076720) |
| Stephanie K. McGuire (TX 11100520) | Christopher D. Hilton (TX 24087727) |
| **HILDER & ASSOCIATES, P.C.** | Ari Cuenin (TX 24078385) |
| 819 Lovett Blvd. | Michael R. Abrams (TX 24087072) |
| Houston, Texas 77006 | Alexander M. Dvorscak (TX 24120461) |
| (713) 655-9111–telephone | Cody C. Coll (TX 24116214) |
| (713) 655-9112–facsimile | **STONE | HILTON PLLC** |
| philip@hilderlaw.com | 600 Congress Ave., Suite 2350 |
| tate@hilderlaw.com | Austin, TX 78701 |
| stephanie@hilderlaw.com | (737) 465-3897-telephone |
|  | judd@stonehilton.com |
|  | chris@stonehilton.com |
|  | ari@stonehilton.com |
|  | michael@stonehilton.com |
|  | alex@stonehilton.com |
|  | cody@stonehilton.com |

Jason Ray
Texas Bar No. 24000511
**RIGGS & RAY, P.C.**
3307 Northland Dr., Ste 215
Austin, Texas 78731
(512) 457-9806 (Telephone)
jray@r-alaw.com

***Attorney for Defendants Colony Ridge, Inc., Colony Ridge Development, LLC, Colony Ridge BV, LLC, Colony Ridge Land, LLC and Defendants T-Rex Management, Inc., John Harris, and Houston El Norte Property Owners' Association, Inc.***

7

## CERTIFICATE OF SERVICE

      I hereby certify that I served a true and correct copy of this document on the below-listed counsel of record, using the CM/ECF system on this, the 25th day of October 2024.

    Richard Berlin
    Daniel Zwart
    Devon Sanders
    Gabriela Martinez
    Jason McKenny
    Kaylie Buettner
    Meredith Spillane
    Monica Ramirez
    Norman Cahn
    **Consumer Protection Division**
    **Office of the Attorney General of Texas**
    808 Travis St., Ste. 1520
    Houston, Texas 77002

    *Attorneys for Plaintiff*
    *State of Texas*

    */s/ Christopher D. Hilton*
    Christopher D. Hilton