UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STATE OF TEXAS, <br>    *Plaintiff,* <br> <br> v. <br> <br> COLONY RIDGE, INC.; COLONY RIDGE DEVELOPMENT, LLC; COLONY RIDGE BV, LLC; COLONY RIDGE LAND, LLC; T-REX MANAGEMENT, INC.; JOHN HARRIS; HOUSTON EL NORTE PROPERTY OWNERS ASSOCIATION, INC.; and CH&P MANAGEMENT LLC, <br>    *Defendants.* | ) <br> ) <br> ) <br> )   CASE NO. 4:24-cv-00941 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION**

## NATURE AND STATE OF THE PROCEEDING

Plaintiff, the State of Texas ("Plaintiff" or "State"), respectfully submits its response to Defendants' Objections to Memorandum and Recommendations (ECF No. 62). On October 11, 2024, the Magistrate Judge issued his Memorandum and Recommendation (ECF No. 61) ("M&R"), rejecting all of Defendants' arguments for dismissal and concluding that the Court has subject matter jurisdiction over this suit.

On October 25, 2024, Defendants filed objections to the M&R, alleging that the Court lacks subject matter jurisdiction because (1) the Consumer Financial Protection Bureau ("CFPB") "cannot take any lawful action, including receipt of pre-suit notices, until payments from the Federal Reserve to the Treasury resume" (ECF No. 62 at 5); and (2) the Consumer Financial Protection Act ("CFPA") does not permit parallel state and federal enforcement actions (ECF No. 62 at 5-6).

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

(1) Whether the State failed to provide pre-suit notice to the CFPB under the CFPA.

(2) Whether the CFPA permits parallel federal and state enforcement actions.

The above issues are subject to de novo review if they are properly challenged by the losing party.[1]

## ARGUMENT

In its objections to the Magistrate Judge's M&R, Defendants argue that the Magistrate Judge erred in determining that the Court has federal question jurisdiction. Specifically, Defendants argue that federal question jurisdiction is absent because: (1) the State could not provide the statutory pre-suit notice to the CFPB because they believe the CFPB is unlawfully funded (ECF No. 62 at 4); and (2) the State is somehow barred from bringing a CFPA enforcement

---

[1] *Bellforest Tr. v. U.S. Bank for JP Alt 2006-S1*, No. 4:17-CV-1586, 2018 WL 706467, at *2 (S.D. Tex. Feb. 5, 2018) (citing *Davidson v. Georgia–Pac., L.L.C.*, 819 F.3d 758, 762 (5th Cir. 2016), *and* Fed. R. Civ. P. 72(b)(3)).

action that involves some facts that overlap with facts at issue in the CFPB's enforcement action. *See CFPB, et al. v. Colony Ridge Development, LLC, et al.*, Case No. 4:23-CV-04729 (S.D. Tex. filed Dec. 20, 2023).

Because the Magistrate Judge correctly rejected both arguments, the Court should adopt the M&R in full.

**I.   The Magistrate Judge Correctly Determined that the State Provided Pre-suit Notice to the CFPB.**

There is no dispute that the State *provided* the CFPB with pre-suit notice of this action in accordance with 12 U.S.C. § 5552(b)(1)(A). Instead, Defendants attempt to engraft an extra-statutory requirement that the CFPB must also *receive* the notice. But Defendants do not dispute that the CFPB actually received the notice either. Rather, Defendants conflate budgetary terminology to argue that the CFPB hypothetically lacks the authority to do anything because of a purported defect in its funding. As a result of this hypothetical lack of authority, Defendants argue that the State could not comply with the requirement of providing pre-suit notice to the CFPB because the CFPB would not be authorized to *receive* it. This argument lacks any basis in law or fact and was properly rejected by the Magistrate Judge.

At the outset, Defendants' argument fails because the statutory notice requirement set forth in 12 U.S.C. § 5552(b)(1)(A) is not jurisdictional and requires no action of any kind by the CFPB.[2] Section 5552(b)(1) merely requires that, when a state initiates "any action in a court or other administrative or regulatory proceeding" to enforce the CFPA, it must provide the CFPB with

---

[2] "While jurisdictional rules are absolute bars, 'claim-processing' rules, which speak more to the procedural obligations of the parties, may be waived or overcome by considerations of equity such that noncompliance does not remove the court's ability to consider the plaintiff's substantive claims." *See Pennsylvania by Shapiro v. Mariner Fin., LLC*, 711 F. Supp. 3d 463, 475 (E.D. Pa. 2024) (citing *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (So-called claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times" which "should not be given the jurisdictional brand").

2

"notice," consisting of a copy of the complaint, the identities of the parties, and the alleged facts underlying the proceeding. 12 U.S.C. § 5552(b)(1)(A), (C). This is a procedural, not a jurisdictional requirement. So even if there were a defect in the CFPB's funding, it would not have any bearing on the State's statutory authority to assert claims under the CFPA here.

Nonetheless, Defendants argue that § 5552(b)(1) is a limitation on the State's authority to enforce the CFPA. ECF No. 62 at 5. According to Defendants, this section limits state attorneys general so that the only actions they may bring are those that involve facts and legal theories about which the CFPB might not have been aware of, or which, at the very least, are not already subject to a pending CFPB lawsuit. Not so.

By its terms, § 5552(b)(1) is not a limitation *at all*. It is merely a notice requirement. If a state wants to bring an action to enforce the CFPA, it must provide the CFPB with certain information regarding that action. 12 U.S.C. §§ 5552(b)(1)(A), (C). Indeed, providing this notice is *not even a prerequisite* to the filing of an action. *See* 12 § 5552(b)(1)(B) (authorizing a state attorney general to submit its notice to the CFPB *after* filing its complaint). Additionally, § 5552(b)(1)(C)(iii) recognizes that a CFPB action may already exist at the time a state attorney general provides its notice. Simply put, the CFPA's notice provision is not jurisdictional and does not contain the limitations Defendants suggest.

But even if the pre-suit notice provision in § 5552(b)(1) was a jurisdictional requirement, Defendants' argument related to CFPB's funding fails. Defendants argue that the CFPB's funding is unconstitutional in violation of the Appropriations Clause because "the Federal Reserve has no 'surplus funds' to deposit into the Treasury." ECF No. 62 at 2-3. In rejecting this argument, the Magistrate Judge relied on 2024 Supreme Court precedent, and rightly found the CFPB's funding

3

was constitutional and did not impact the State's CFPA claims. M&R at 9; s*ee also Consumer Fin. Prot. Bureau v. Cmty. Fin. Services Ass'n of Am., Ltd*., 601 U.S. 416 (2024) ("*CFSA*").

In *CFSA*, the Supreme Court held that to be constitutional, the CFPB's appropriations must only clear a low bar: "Under the Appropriations Clause, an appropriation ***is simply a law that authorizes expenditures from a specified source of public money for designated purposes***." 601 U.S. at 424 (emphasis added). The Supreme Court upheld the CFPB's funding statute because it "authorizes the Bureau to draw public funds from a particular source—the *combined earnings* of the Federal Reserve System . . . [a]nd . . . it specifies the objects for which the Bureau can use those funds . . . ." *Id.* at 435 (cleaned up) (emphasis added). Accordingly, the Supreme Court concluded, "[t]he statute that provides the Bureau's funding meets these requirements [and] that *the Bureau's funding mechanism does not violate the Appropriations Clause*." *Id.* at 424 (emphasis added). Furthering the point, the Supreme Court noted the lenders challenging the CFPB "offer[ed] no defensible argument that the Appropriations Clause requires more than a law that authorizes the disbursement of specified funds for identified purposes." *Id.* at 438.

Despite this low bar for constitutionality, Defendants attack the CFPB's funding statute based on a flawed understanding of what "combined earnings" means.[3] Defendants quote a press release discussing minutiae of the Federal Reserve's expenses exceeding its revenues. ECF No. 62 at 3. Defendants essentially hypothesize that because the Federal Reserve's expenses exceeded its revenues, the Federal Reserve had no "combined earnings" to fund the CFPB. However, even the dissent in *CFSA* does not support Defendants' theory, since it noted that "[t]he Federal Reserve's *earnings* represent specific charges for specific services to specific individuals or companies." 601 U.S. at 469 (Alito, J., dissenting) (cleaned up) (emphasis added). Thus, the

---

[3] As stated in the CFPB's appropriations statute, "the Board of Governors shall transfer [funds] to the [CFPB] from the *combined earnings* of the Federal Reserve System." 12 U.S.C. § 5497(a)(1) (emphasis added).

4

term "earnings" equates to revenue, and it is undisputed there were "earnings" (or revenue) from which the Federal Reserve funded the CFPB.[4]

Further still, various courts, including in the Eastern District of Texas, have rejected similar CFPB funding arguments.[5] In fact, the defendant in *Active Network* relied on the exact same Federal Reserve press release upon which Defendants mistakenly rely on in this case. *See* ECF No. 28 at 23 filed in 4:22-CV-00898. After extensive briefing, Judge Mazzant denied defendant's motion to dismiss in its entirety. *See Active*, 2024 WL 4437639, at *2.

***Finally, and most importantly***, Congress empowered state attorneys general to bring CFPA actions, 12 U.S.C. § 5552(a)(1), and Defendants cite no case law supporting the baseless claim that if the CFPB (somehow) is unconstitutional, the *entirety* of the CFPA is abolished, including (standalone) provisions such as 12 U.S.C. § 5536(a)(1)(B), which prohibit "unfair, deceptive, or abusive act[s] or practice[s]." In a related CFPA government-enforcement case, the court emphasized that "courts perform a severability analysis to see if the entire statute or just the unconstitutional provision within that statute must be stricken." *Mariner Fin., LLC*, 711 F. Supp. 3d at 475. Of course, this is because courts "try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010) (cleaned up)*.* Thus*,* as long as "the different parts are not so intimately connected so as to make the statute one composite whole, the unconstitutional parts may be rejected and the constitutional parts may stand." *Mariner Fin., LLC*, 711 F. Supp. 3d at 475 (citing *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)).

---

[4] *See* Press Release, Federalreserve.gov (Jan. 12, 2024), available at https://www.federalreserve.gov/newsevents/pressreleases/other20240112a.htm (banks "earned" $10.4 billion in interest and had "additional earnings" from payment and settlement services of $0.5 billion).

[5] *See CFPB v. Active Network, LLC*, No. 4:22-CV-00898, 2024 WL 4437639 (E.D. Tex. Oct. 7, 2024); *CFPB v. Solo Funds, Inc.*, No. 2:24-CV-04108-RGK-AJR, 2024 WL 4553110, at *2 (C.D. Cal. Oct. 17, 2024) (denying defendant's motion to dismiss on grounds that the CFPB is improperly funded).

5

This is precisely what the Supreme Court did in *Seila Law LLC v. CFPB* when it "use[d] a scalpel rather than a bulldozer" in ruling the CFPA unconstitutionally limited the President's authority to dismiss a CFPB Director, while leaving the rest of the CFPB (and the CFPA) intact. 591 U.S. 197, 140 (2020). Despite the Supreme Court's severability analysis in *Seila*, Defendants ask the Court to dismiss the State's complaint in its entirety based on an issue wholly separate from the funding of the CFPB—a procedural notice provision. Nothing Defendants cite supports a severability analysis that would render the entire CFPA unenforceable, particularly given the separate enforcement authority Congress granted to the state attorneys general. Accordingly, the Court has subject matter jurisdiction.

**II. The Magistrate Judge Correctly Determined that the CFPA Permits Parallel Enforcement Actions.**

The Magistrate Judge correctly concluded that the CFPA does not bar parallel enforcement actions by the State and CFPB. M&R at 10-11 (the Magistrate Judge found that "[t]he two parts of the [CFPA] that Colony Ridge relies on [the pre-suit notice and intervention provisions (12 U.S.C. §§ 5552(b)(1)(A) and 5552(b)(2))] do not prevent parallel litigation"). Nonetheless, Defendants argue that: (1) "[t]he CFPA's framework impliedly bars" this suit; and (2) that the provision allowing the CFPB to intervene in actions brought by state enforcers also bars this suit. Both arguments lack merit. ECF No. 62 at 5-6.

"The starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'" *Arif v. Mukasey*, 509 F.3d 677, 681 (5th Cir. 2007) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)). And here, the text of 12 U.S.C. § 5552(a)(1) expressly authorizes the state attorneys general to bring claims enforcing the CFPA, regardless of overlapping federal enforcement. The relevant language of 12 U.S.C. § 5552(a)(1) is unambiguous: "Except as provided in paragraph (2), the attorney general

. . . of any State may bring a civil action . . . to enforce provisions of this title or regulations . . . and to secure remedies under [the] provisions of this title or remedies otherwise provided under other law." The only enumerated exception that appears within § 5552's grant of concurrent authority is within paragraph (a)(2). That paragraph only bars "a civil action in the name of such State against a national bank or Federal savings association to enforce a provision of this title." 12 U.S.C. § 5552(a)(2)(A). Defendants do not purport to be a national bank or Federal savings association, so this exception is irrelevant. Accordingly, "the clear statutory language of the [CFPA] permits concurrent state claims, *for nothing in the statutory framework suggests otherwise*." *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 287 (3d Cir. 2020) (emphasis added).

The Magistrate Judge also correctly points out that the CFPB's and the State's lawsuits allege different causes of action. M&R at 11. In addition, unlike the CFPB's claims, the State alleges CFPA claims against *five* Defendants.[6] In contrast, the CFPB only alleges CFPA claims against *three* of these Defendants.[7] Dismissing the State's CFPA claims would exonerate John Harris and T-Rex Management, Inc. from liability under 12 U.S.C. § 5536(a)(1)(B) of the CFPA *and* the Interstate Land Sales Full Disclosure Act (15 U.S.C. § 1701, *et seq*.), an enumerated consumer law under the CFPA.[8]

In arguing that concurrent claims are "impliedly" barred from the CFPA's framework and waste judicial resources, Defendants rely on *Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292 (D.N.M. 2018), a case that is not relevant to this matter. ECF No. 62 at 5. The *Navajo Nation* Court dismissed CFPA claims filed by a tribal government where the CFPB

---

[6] The State's lawsuit asserts CFPA claims against: (1) Colony Ridge Land, LLC; (2) John Harris; (3) Colony Ridge Development, LLC; (4) Colony Ridge BV, LLC; and (5) T-Rex Management, Inc. ECF No. 27.
[7] The CFPB asserted CFPA claims against (1) Colony Ridge Development, LLC; (2) Colony Ridge BV, LLC; and (3) Colony Ridge Land, LLC. *CFPB, et al. v. Colony Ridge Development, LLC, et al.*, Case No. 4:23-CV-04729 (S.D. Tex. filed Dec. 20, 2023).
[8] 12 U.S.C. §§ 5481(12)(R), 5481(14), 5552(a)(1).

7

had already settled similar claims. *Navajo Nation* is distinguishable because the tribal government's claims were dismissed solely on *res judicata* grounds. *Id*. at 1308. "Nothing in [*Navajo Nation*] suggests an implied prohibition on concurrent [state attorney general] claims under the [CFPA,]" nor was the issue ever briefed. *Navient Corp*., 967 F.3d at 285, n. 8. In fact, the *Navajo Nation* Court held that "no provision of the [CFPA] *expressly* prohibits successive litigation by a nonparty to the first suit." 344 F. Supp. 3d at 1307. The tribe's claims were also never concurrent with the CFPB's claims. *Navajo Nation* filed its complaint over a year after the CFPB's 2016 Consent Order against Wells Fargo Bank, N.A. *Id*. at 1297-99.

In arguing that parallel litigation contravenes the CFPA's intervention provisions and would invite violations of the rule that a plaintiff cannot sue the same defendant twice in the same court over the same matter (ECF No. 62 at 5-6), Defendants misplace reliance on two easily distinguishable cases: *The Haytian Republic*, 154 U.S. 118 (1894), and *Olney v. Gardner*, 771 F.2d 856 (5th Cir. 1985). These cases involve situations where a ***single*** plaintiff filed two separate lawsuits against the same defendant(s). In contrast, the State and the CFPB are two different plaintiffs with two very different lawsuits.[9] Moreover, the State's lawsuit involves additional defendants and is intended to protect the public from and remediate violations of state *and* federal laws.

In arguing that the State's suit would "waste judicial resources, heighten the risk of inconsistent decisions, and clash with Congress's demand that the CFPB enforce the CFPA 'consistently'" (ECF No. 62 at 6), Defendants attempt to rely on *United Sav. Ass'n of Texas v.*

---

[9] Defendants fail to cite any case law supporting that, where a statute allows third-party intervention, concurrent claims are barred. "Congress has enacted numerous statutes that authorize state enforcement while limiting concurrent claims in some way and numerous statutes that authorize state enforcement without limiting concurrent claims. Compare 15 U.S.C. § 6103(d) *with* 49 U.S.C. § 14711. That the [CFPA] allows for the Bureau to intervene does not clearly decide whether concurrent claims are permitted." *Navient Corp*., 967 F.3d at 286.

8

*Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988). Unlike the unambiguous language of 12 U.S.C. § 5552(a)(1), *United Sav. Ass'n of Texas* involved 11 U.S.C. § 362(d), a section of the Bankruptcy Code that contained several ambiguous terms that needed to be "clarified by the remainder of the statutory scheme[,]" including the terms "adequate protection" and "interest in property[.]" [10] 484 U.S. at 371. Unlike 11 U.S.C. § 362(d), the statutory language of 12 U.S.C. § 5552(a)(1) is clear and unambiguous. *See Arif*, 509 F.3d at 681.

Defendants' "waste [of] judicial resources" argument similarly fails for several reasons. First, the State has a fundamental right to protect its citizens and prevent harmful conduct from occurring within the State of Texas.[11] Second, the State could achieve outcomes beyond what the CFPB achieves, even if the CFPB litigates the case through trial and obtains a judgment. For example, the State asserted CFPA claims against two additional Defendants, John Harris and T-Rex Management, Inc., neither of which are part of the CFPB's lawsuit. In addition, the State could find witnesses and facts that persuade this Court to order consumer restitution, consumer damages, injunctive terms, and/or other relief beyond what the CFPB obtains. Third, at this juncture, it is unclear what the outcome of the CFPB's CFPA claims against Colony Ridge Development, LLC, Colony Ridge BV, LLC, and Colony Ridge Land, LLC will be. The CFPB's claims could be disposed, settled, or withdrawn altogether. If any of these outcomes occur, the State would still be free to protect the rights of Texas consumers. *See id*.

Finally, Defendants' argument that "action by the CFPB is intended to represent the interests of all consumers nationwide" (ECF No. 62 at 6) is also without merit.

---

[10] 11 U.S.C. § 362(d) reads, in relevant part, as follows: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay- (1) for cause, including the lack of **adequate protection** of an **interest in property** of such party in interest; . . . ." *United Sav. Ass'n of Texas*, 484 U.S. at 369–70 (emphasis added).

[11] *Navient Corp.*, 967 F.3d at 286 ("Pennsylvania and other states have a fundamental right to protect their citizens and prevent harmful conduct from occurring in their jurisdictions.").

9

"Congress . . . reinforced and *expanded* the role of the States in protecting consumers, recognizing that States have been 'much closer to abuses and are able to move more quickly when necessary to address them.' S. Rep. No. 111-176, at 174. To that end, the CFPA . . . expanded the role of the States in pursuing enforcement action, *id*. at § 5552(a)(1)." *Mariner Fin., LLC*, 711 F. Supp. 3d at 472-73. "This concurrent grant of enforcement authority allows States to vindicate their 'fundamental right to protect their citizens and prevent harmful conduct from occurring in their jurisdictions[.]'" *Id*. at 473 (citing *Navient Corp.*, 967 F.3d at 286). Moreover, as the Third Circuit recognized, "[t]he interests of the states and the Bureau may not always be completely aligned." *Navient Corp*., 967 F.3d at 286 (emphasis added). Accordingly, the Court has subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' objections should be rejected, and the M&R should be adopted in full.

Dated: November 8, 2024.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**JOHNATHAN STONE**
Chief, Consumer Protection Division

/s/ Richard Berlin
RICHARD BERLIN
Attorney-in-Charge
TX Bar No.: 24055161
S.D. Tex. Bar No.: 724520
Email: rick.berlin@oag.texas.gov
DANIEL ZWART
TX Bar No.: 24070906
Email: daniel.zwart@oag.texas.gov
KAYLIE BUETTNER
TX Bar No.: 24109082
Email: kaylie.buettner@oag.texas.gov
MEREDITH SPILLANE
TX Bar No.: 24131685
Email: meredith.spillane@oag.texas.gov
Assistant Attorneys General
Consumer Protection Division
Office of the Attorney General
808 Travis Street, Suite 1520
Houston, Texas 77002
Tele: 713-223-5886/Fax: 713-223-5821

GABRIELA I. MARTINEZ
TX Bar No.: 24085454
Email: gabriela.martinez@oag.texas.gov
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General
401 E. Franklin Ave, Suite 530
El Paso, TX 79901
Tele: 915-834-5800/Fax: 915-542-1546

MONICA F. RAMIREZ
TX Bar No.: 24068621
Email: monica.ramirez@oag.texas.gov
Jason McKenney
TX Bar No.: 24070245
Email: jason.mckenney@oag.texas.gov
NORMAN R. CAHN
TX Bar No.: 24125161
Email: norman.cahn@oag.texas.gov
Assistant Attorneys General
Consumer Protection Division
Office of the Attorney General
12221 Merit Drive, Suite 650
Dallas, TX 75251
Tele: 214-969-7639/Fax: 214-969-7615

**ATTORNEYS FOR PLAINTIFF
THE STATE OF TEXAS**

CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on November 8, 2024, a true and correct copy of the foregoing was served using the Court's electronic filing system to the following:

Quentin Tate Williams
Attorney-in-Charge
Philip Harlan Hilder
James Gregory Rytting
Stephanie K. McGuire
Hilder & Associates, P.C.
819 Lovett Blvd.
Houston, TX 77006
Tel.: (713) 655-9111
Fax: (713) 655-9112
Email: tate@hilderlaw.com
  philip@hilderlaw.com
  james@hilderlaw.com
  stephanie@hilderlaw.com

Judd E. Stone II
Christopher D. Hilton
Ari Cuenin
Alexander M. Dvorscak
Michael Abrams
Stone Hilton PLLC
1115 W. Slaughter Ln.
Austin, TX 78748
Tel.: (737) 465-3897
Email: judd@stonehilton.com
  chris@stonehilton.com
  ari@stonehilton.com
  alex@stonehilton.com
  michael@stonehilton.com

Jason Ray
Riggs & Ray, P.C.
3307 Northland Dr., Suite 215
Austin, TX 78731
Tel.: (512) 457-9806
Fax: (512) 457-9066
Email: jray@r-alaw.com

                                           */s/ Richard Berlin*
                                           RICHARD BERLIN